**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

AIMEE KRAUSE, individually and on behalf
of all others similarly situated,

*Plaintiff,*

*v.*

ROCKETREACH, LLC, a Wyoming limited
liability company,

*Defendant.*

**<u>CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL</u>**

Plaintiff Aimee Krause brings this class action complaint against Defendant

RocketReach, LLC, to put an end to its unlawful practice of using the names and identities of

Illinois residents without their consent in order to promote its service. Plaintiff, on behalf of

herself and all others similarly situated, alleges as follows upon personal knowledge as to her

own acts and experiences, and, as to all other matters, upon information and belief, including

investigation conducted by her own attorneys.

**<u>NATURE OF THE ACTION</u>**

1.     Defendant RocketReach operates a website that sells access to a database

containing proprietary information about people to anybody willing to pay RocketReach for a

monthly subscription.

2.     To market its service, RocketReach encourages prospective customers to perform

a free people search on its website. When consumers perform a free search for an individual—by

typing the individual's first and last name into the search bar—RocketReach displays a preview

page featuring the searched individual's full name alongside certain uniquely identifying

information, including, location, work history, and education. The purpose of this page is twofold: first, it shows potential customers that the RocketReach's database contains the *specific* individual they searched for and represents that a paid subscription grants access to much more information about the individual than the "free" preview; and second, it offers to sell them a paid subscription, where they can access proprietary information about anybody in its database. In other words, RocketReach does not offer to sell information about the individuals searched on its website, but rather, uses their identities to sell subscriptions to its paid service.

3. Unsurprisingly, the people appearing in these advertisements never provided RocketReach with their consent (written or otherwise) to use their identities for any reason, let alone for marketing purposes.

4. By using Illinois residents' full names in its advertisements without their consent and for its own commercial gain, RocketReach violated—and continues to violate—the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq.*

## PARTIES

5. Plaintiff Aimee Krause is a natural person and a citizen of the State of Illinois.

6. Defendant RocketReach, LLC, is a limited liability company existing under the laws of the State of Wyoming with its principal place of business located at 10400 NE 4th Street, Floor 5, Unit 133, Bellevue, Washington 98004.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the putative Class is a citizen of a state different from the Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) none of the exceptions under the subsection apply to this action.

8.     This Court has personal jurisdiction over Defendant because they transact significant business in this District, misappropriate the identities of people that they know reside in this District, and the unlawful conduct alleged in the Complaint occurred in and emanated from this District.

9.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Plaintiff resides in this District and a substantial part of the events giving rise to this claim occurred in this District.

## COMMON FACTUAL ALLEGATIONS

*The Illinois Right of Publicity Act*

10.     In 1999, the Illinois Legislature recognized that every individual has the "right to control and choose whether and how [his or her] identity [is used] for commercial purposes," 765 ILCS 1075/10, and as a result, passed the IRPA to protect individual property rights and prevent the exploitation of individuals' identities for another's commercial gain.

11.     The Act protects individuals from the unauthorized use of *any* of their attributes, including but not limited to, their names, signatures, photographs, images, likenesses, or voices in the sale or advertisement of goods, merchandise, products, and services.

12.     In fact, the IRPA states that "[a] person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person…." 765 ILCS 1075/30. Notably, the IRPA does not require the person seeking relief under the Act to be a public figure.

*RocketReach Uses Individuals' Names To Promote A Paid Subscription To Its Database*

13.     RocketReach owns and operates a website that sells paid subscription access to "the world's largest and most accurate database of emails and direct dials." RocketReach

compiles its phone and email database, in part, from corporate websites, and social media accounts, and markets its database as a tool used by millions of paying customers (*e.g.*, "companies large and small") to power sales, recruit, and engage in marketing.

14. A RocketReach subscription must be purchased from its website, which allows its paying customers to perform searches on anyone in its database and obtain, *inter alia,* any individual's email address, phone number, and complete work history.

15. When a user visits RocketReach's website and searches for an individual by using his or her first and last name, RocketReach displays a landing page of the individuals found within its records that have the same name, alongside certain uniquely identifying information such as each individual's location, previews of email addresses, work information, job title, and a link to the individual's social media profile, such as LinkedIn and Facebook ("Marketing Page"). *See* Figure 1.



(**Figure 1**)

16. Within the Marketing Page, RocketReach displays an advertisement stating it "found phones" for the searched individual, which are only available by subscribing to RocketReach's "+Phone plans." Once a user selects the "available on +Phone plans" link, Rocket Reach displays a prompt urging the user to "Upgrade to a +Phone Plan" and a list of available paid plans. *See* Figure 2. Users can purchase (1) an "Essentials" plan costing $69 allowing a paying customer to perform 1,920 searches, (2) a "Pro" plan costing $139 per month allowing a paying customer to perform 4,500 searches, or (3) an "Ultimate" plan costing $279 allowing a paying customer to perform 10,000 searches. *See* Figure 3.



(**Figure 2**)



(**Figure 3**)

17.     All this advertising is intended to sell subscriptions to RocketReach's services.

Indeed, rather than offering to sell a user detailed information about a searched-for individual,

RocketReach attempts to sell a monthly subscription service that would grant the purchaser

access to detailed information on anybody in its database.

18.     In this way, RocketReach misappropriated people's identities (names and other identifying information such as their location and employer information) for its own commercial benefit (to market and promote a monthly subscription to access any and all reports in its database).

19.     Most importantly, RocketReach never obtained written consent from Plaintiff and Class members to use their names or other identifying information for any reason, let alone for commercial purposes. Defendant never notified Plaintiff and Class members that their names or other identifying information would appear on its Marketing Page in conjunction with an offer to purchase access to its database of reports. Moreover, Plaintiff and the Class members have no relationship with RocketReach whatsoever.

20.     Plaintiff, on behalf of herself and other similarly situated Illinois residents, brings this action against Defendant for its ongoing violations of the IRPA, and seeks (1) injunctive relief requiring Defendant to cease using Illinois residents' identities for commercial purposes, including on its Marketing Page, (2) the greater of an award of actual damages, including profits derived from the unauthorized use of individuals' names, or statutory damages, (3) an award of punitive damages, and (4) an award of costs and reasonable attorneys' fees.

**FACTS SPECIFIC TO PLAINTIFF KRAUSE**

21.     In 2021, Plaintiff Aimee Krause discovered that RocketReach was using her identity to solicit the purchase of paid subscriptions to RocketReach.

22.     RocketReach specifically identified Plaintiff by her full name, employer, job title, and links to her social media pages on its Marketing Page. *See* Figure 1.

23.     Plaintiff never provided RocketReach with her written consent (or consent of any

kind) to use any attribute of her identity for commercial purposes, and certainly never authorized

RocketReach to use her identity to promote any of its products or services.

24.     Plaintiff Aimee Krause is not and has never been a RocketReach customer. She

has no relationship with RocketReach whatsoever.

## CLASS ALLEGATIONS

25.     **Class Definitions**: Plaintiff Aimee Krause brings this action pursuant to Federal

Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and a Class defined as

follows:

> All Illinois residents whose identities were displayed on the Marketing Page.

26.     Excluded from the Class are: (1) any Judge or Magistrate presiding over this

action and members of their families; (2) Defendant, Defendant's subsidiaries, parents,

successors, predecessors, and any entity in which the Defendant or their parents have a

controlling interest and its current or former employees, officers and directors; (3) persons who

properly execute and file a timely request for exclusion from the Class; (4) persons whose claims

in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's

counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of

any such excluded persons.

27.     **Numerosity**: The exact number of Class members is unknown and not available

to Plaintiff at this time, but it is clear that individual joinder is impracticable. Class members can

be identified through Defendant's records.

28.     **Commonality and Predominance**: There are many questions of law and fact

common to the claims of Plaintiff and the putative Class, and those questions predominate over

any questions that may affect individual members of the Class. Common questions for the Class

include, but are not necessarily limited to the following:

    a.    Whether Defendant used Plaintiff's and Class members' names and identities for a commercial purpose;

    b.    Whether Plaintiff's and Class members provided their written consent to Defendant to use their names and identities in advertisements;

    c.    Whether the conduct described herein constitutes a violation of the Illinois Right of Publicity Act; and

    d.    Whether Plaintiff and the Class are entitled to injunctive relief.

29.    **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendant's uniform wrongful conduct.

30.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

31.    **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff. Plaintiff and the members of the Class have suffered harm and damages as a result of

Defendant's unlawful and wrongful conduct.

32. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## FIRST CAUSE OF ACTION
### Violation of the Illinois Right of Publicity Act 765 ILCS 1075/1, *et seq.*
### (On behalf of Plaintiff and the Class)

33. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

34. The Illinois Right of Publicity Act prohibits using a person's name, photograph, image, or likeness for the purpose of advertising or promoting products, merchandise, goods, or services without written consent. *See* 765 ILCS 1075/1, *et seq.*

35. Defendant sells subscription-based access to its database containing detailed reports about people.

36. As described above, to promote those reports, Defendant used Plaintiff's and the

putative class members' identities on its Marketing Pages, which display the individuals found within its records that match searched-for names, alongside uniquely identifying information such as each person's location, employer name, job title, and links to social media profiles. This information serves to identify such individuals to a reasonable audience.

37.     The Marketing Page has a commercial purpose in that it promotes the RocketReach website and a paid membership to access reports in its database.

38.     Plaintiff and members of the Class never provided Defendant with their written consent to use their full names (or any attribute of their identity) in advertisements for RocketReach. Defendant never notified Plaintiff and Class members that their identities would be used in commercial advertisements.

39.     Defendant deprived Plaintiff and Class members of control over whether and how their names and other identifying information can be used for commercial purposes.

40.     Based upon Defendant's violation of the Illinois Right of Publicity Act, Plaintiff and Class members are entitled to (1) an injunction requiring Defendant to cease using Plaintiff's and members of the Class's names and any attributes of their identities to advertise its products and services, (2) the greater of an award of actual damages (including profits derived from the unauthorized use of Plaintiff's and Class members' names and identities) or statutory damages of $1,000 per violation to the members of the Class, (3) an award of punitive damages, and (4) an award of costs and reasonable attorneys' fees under 765 ILCS 1075/40-55.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Aimee Krause, individually and on behalf of the Class, prays that the Court enter an Order:

a.      Certifying this case as a class action defined above, appoint Aimee Krause as Class Representative, and appoint her counsel as Class Counsel;

b.    Declaring that Defendant's actions described herein constitute a violation of the Illinois Right of Publicity Act;

c.    Awarding injunctive and other equitable relief as necessary to protect the interest of the Class, including, *inter alia,* an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

d.    Awarding the greater of actual damages, including the profits derived from the unauthorized use of same, or statutory damages in the amount of $1,000 per violation of the members of the Class;

e.    Awarding punitive damages where applicable;

f.    Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

g.    Awarding Plaintiff and the Class pre- and post-judgment interest; and

h.    Granting such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff requests trial by jury of all matters that can be so tried.

Respectfully Submitted,

**AIMEE KRAUSE,** individually and on behalf of all others similarly situated,

Dated: April 12, 2021

By: /s/Benjamin H. Richman
One of Plaintiff's Attorneys

Benjamin H. Richman
brichman@edelson.com
Ari J. Scharg
ascharg@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
Albert J. Plawinski
aplawinski@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370

Fax: 312.589.6378

*Attorneys for Plaintiff and the Class*