**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION**

| | | |
|---|---|---|
| AIMEE KRAUSE, individually and on behalf of all others similarly situated, | ) | |
| | ) | Case No. 21-cv-1938 |
| Plaintiff, | ) | |
| | ) | Honorable Elaine E. Bucklo |
| v. | ) | |
| | ) | |
| ROCKETREACH, LLC, a Wyoming limited liability company, | ) | |
| | ) | |
| Defendant. | ) | |

***AMENDED* MEMORANDUM**
**IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS**

# TABLE OF CONTENTS


I. FACTS .......... 2

A. The RocketReach Website .......... 2

B. Plaintiff's Complaint .......... 3

II. STANDARD OF REVIEW .......... 5

III. ARGUMENT .......... 6

A. Plaintiff Has Not Pled an IRPA Claim as a Matter of Law. .......... 6

1. RocketReach's Website Falls Squarely In IRPA's (b)(1) Exemption. .......... 7

2. The (b)(2) Exemption Protects RocketReach's Website. .......... 9

3. RocketReach's Search Results Also Are Exempt Under 765 ILCS 1075/35(b)(4) Because They "Promote" Or "Advertise" Exempted Uses .......... 10

4. A Ruling In RocketReach's Favor Is Consistent With Northern District Caselaw. .......... 12

B. The First Amendment Bars Plaintiff's Claim. .......... 13

1. RocketReach's Website Is Protected First Amendment Expression. .......... 14

a) The First Amendment Protects Databases Like RocketReach's. .......... 14

b) The RocketReach Website Is Not Commercial Speech Under First Amendment Jurisprudence .......... 14

2. RocketReach's Promotion Of Its Own Website Is Protected Under The First Amendment Because The Content Itself Is Protected. .......... 18

C. RocketReach Is Immune Under the Communications Decency Act. .......... 19

D. The Dormant Commerce Clause Bars Plaintiff's Claim. .......... 22

IV. CONCLUSION .......... 23

# TABLE OF CASES

**Cases** **Page(s)**

*Almeida v. Amazon.com, Inc.*,
456 F.3d 1316 (11th Cir. 2006)....................11

*Am. Booksellers Found. v. Dean*,
342 F.3d 96 (2d Cir. 2003)....................23

*Ariix, LLC v. Nutrisearch Corp.*,
No. 17-cv-320, 2018 U.S. Dist. LEXIS 48527 (S.D. Cal. Mar. 23, 2018) ....................15, 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................6, 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................2, 5

*Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*,
206 F.3d 980 (10th Cir. 2000)....................20

*Blair v. Nev. Landing P'ship*,
369 Ill. App. 3d 318 (Ill. App. 2006) ....................13

*Bolger v. Youngs Drug Prods. Corp.*,
463 U.S. 60 (1983)....................18

*Callahan v. Ancestry.com Inc.*,
No. 20-cv-8437, 2021 U.S. Dist. LEXIS 37811 (Mar. 1, 2021)....................21

*Carafano v. Metrosplash, Inc.*,
207 F. Supp. 2d 1055 (C.D. Cal. 2002)....................17

*Cher v. Forum Int'l, Ltd.*,
692 F.2d 634 (9th Cir. 1982)....................18

*Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*,
519 F.3d 666 (7th Cir. 2008)....................19, 20

*Collier v. Murphy*,
No. 02-cv-2121, 2003 U.S. Dist. LEXIS 4821 (N.D. Ill. Mar 26, 2003)....................6, 9

*Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*,
149 F.3d 679 (7th Cir. 1998)....................9, 18

*Dart v. Craigslist, Inc.*,
665 F. Supp. 2d 961 (N.D. Ill. 2009) ....................20

*Dex Media W., Inc. v. City of Seattle*,
696 F.3d 952 (9th Cir. 2012)....................14, 15, 17, 18

*Dobrowolski v. Intelius, Inc.*,
No. 17-cv-1406, 2017 U.S. Dist. LEXIS 138587 (N.D. Ill. Aug. 29, 2017)....................6

*Dobrowolski v. Intelius, Inc.*,
No. 17-cv-1406, 2018 U.S. Dist. LEXIS 240434 (N.D. Ill. May 21, 2018)....................6, 11, 12

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*,
485 U.S. 568 (1988)....................13

*Esch v. Universal Pictures Co.*,
No. 6:09-cv-2258, 2010 U.S. Dist. LEXIS 140543 (N.D. Ala. Nov. 1, 2010)....................18

*Evans v. Lederle Labs.*,
167 F.3d 1106 (7th Cir. 1999)....................5

*Exeltis USA Inc. v. First Databank, Inc.*,
No. 17-cv-04810, 2017 U.S. Dist. LEXIS 210482 (N.D. Cal. Dec. 21, 2017)....................15, 16, 17

*Force v. Facebook, Inc.*,
934 F.3d 53 (2d Cir. 2019)....................20, 21

*Gabiola v. Sarid*,
2017 U.S. Dist. LEXIS 157699 (N.D. Ill Sept. 26, 2017)....................13

*Genus Lifesciences Inc. v. Lannett Co.*,
378 F. Supp. 3d 823 (N.D. Cal. 2019)....................15, 16, 17

*Gibson v. Chicago*,
910 F.2d 1510 (7th Cir. 1990)....................5

*Hadley v. GateHouse Media Freeport Holdings, Inc.*,
No. 12-cv-1548, 2012 U.S. Dist. LEXIS 98674 (N.D. Ill. July 10, 2012)....................19

*Health Sys. Agency of N. Va. v. Va. State Bd. of Med.*,
424 F. Supp. 267 (E.D. Va. 1976)....................14

*Healy v. Beer Inst., Inc.*,
491 U.S. 324 (1989)....................22

*Huon v. Denton*,
841 F.3d 733 (7th Cir. 2016)....................21, 22

*Jane Doe No. 1 v. Backpage.com, LLC*,
817 F.3d 12 (1st Cir. 2016)....................20

*Kimzey v. Yelp! Inc.*,
836 F.3d 1263 (9th Cir. 2016)....................20, 21

*Klayman v. Zuckerberg*,
753 F.3d 1354 (D.C. Cir. 2014) .......... 21

*Life After Hate, Inc. v. Free Radicals Project, Inc.*,
No. 18-cv-6967, 2020 U.S. Dist. LEXIS 69038 (N.D. Ill. Apr. 16, 2020) .......... 9-10

*Lukis v. Whitepages Inc.*,
454 F. Supp. 3d 746 (N.D. Ill. 2020) .......... 12, 13, 21

*Lukis v. Whitepages Inc.*,
Nos. 19-cv-4871 and 19-cv-4892, 2020 U.S. Dist. LEXIS 199691 (N.D. Ill. Oct. 27, 2020) .......... 12, 13, 21

*Montana v. San Jose Mercury News, Inc.*,
34 Cal. App. 4th 790 (Cal. Ct. App. 1995) .......... 18

*Nat'l Solid Wastes Mgmt. Ass'n v. Meyer*,
63 F.3d 652 (7th Cir. 1995) .......... 22

*Newbold v. State Farm Mut. Auto. Ins. Co.*,
No. 13-cv-9131, 2015 U.S. Dist. LEXIS 194101 (N.D. Ill. Jan. 23, 2015) .......... 3

*Nieman v. VersusLaw, Inc.*,
2012 U.S. Dist. LEXIS 109069, 512 F. App'x 635 (7th Cir. 2013) .......... 6, 8, 12, 17

*Obado v. Magedson*,
No. 13-cv-2382, 2014 U.S. Dist. LEXIS 104575 (D.N.J. July 31, 2014) .......... 8

*Page v. Something Weird Video*,
960 F. Supp. 1438 (C.D. Cal. 1996) .......... 18

*Parker v. Paypal, Inc.*,
No. Civ. 16-4786, 2017 U.S. Dist. LEXIS 130800 (E.D. Pa. Aug. 16, 2017) .......... 20

*Phillips v. Prudential Ins. Co. of Am.*,
714 F.3d 1017 (7th Cir. 2013) .......... 3, 5

*Pike v. Bruce Church, Inc.*,
397 U.S. 137 (1970) .......... 22

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*,
413 U.S. 376 (1973) .......... 17

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015) .......... 13

*Rogers v. Grimaldi*,
875 F.2d 994 (2d Cir. 1989) .......... 11

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011) .......... 14

*Sroga v. Laboda*,
748 Fed. App'x 77 (7th Cir. 2019)....................3

*Stayart v. Google Inc.*,
783 F. Supp. 2d 1055 (E.D. Wis. 2011)....................3, 8

*Thompson v. Getty Images (US), Inc.*,
No 13-cv-1063, 2013 U.S. Dist. LEXIS 91828 (N.D. Ill. July 1, 2013)....................6, 9, 10, 12, 22

*Trannel v. Prairie Ridge Media, Inc.*,
2013 IL App (2d) 120725 ....................13

*U.S. v. Benson*,
561 F.3d 718 (7th Cir. 2009)....................15

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
987 F.2d 429 (7th Cir. 1993)....................3

*Vrdolyak v. Avvo, Inc.*,
206 F. Supp. 3d 1384 (N.D. Ill. 2016) ....................7, 8, 12, 14, 15

*Wright v. Assoc. Ins. Cos.*,
29 F.3d 1244 (7th Cir. 1994) ....................2

*Zacchini v. Scripps-Howard Broad. Co.*,
433 U.S. 562 (1977)....................8, 13

*Zeran v. Am. Online, Inc.*,
129 F.3d 327 (4th Cir. 1997)....................21

*Zimmerman v. Tribble*,
226 F.3d 568 (7th Cir. 2000)....................5

**Statutes**

Illinois Right of Publicity Act, 765 ILCS 1075/1 *et seq.*....................*passim*

47 U.S.C. § 230....................19

**Other Authorities**

Commerce Clause....................2, 22, 23

First Amendment ....................*passim*

Rule 12(b)(6) ....................5

Plaintiff complains her identity was included in an advertisement without her consent. In fact, her information was not included in an advertisement; it was accessible on a website that indexes and allows users to search for publicly available professional contact information. RocketReach, the creator of the website, allows users to browse and sample the website when considering whether to purchase a paid subscription. Plaintiff characterizes this rather typical arrangement—analogous to a free trial of Lexis or Westlaw, or a newspaper website that lets a non-subscriber view a limited number of articles before hitting a paywall—as uniquely nefarious. By analogy to the offline world, Plaintiff's complaint is akin to arguing that a bookstore creates "advertisements" when it lets shoppers browse its aisles and flip through the pages of books.

Plaintiff strains both the facts and the law to allege a claim against RocketReach under the Illinois Right of Publicity Act ("IRPA"). In the Complaint, Plaintiff portrays search results not as mere "search results" but as an "advertisement" or a "Marketing Page." Although Plaintiff does not object to her inclusion in the website's search index and acknowledges that RocketReach's information is compiled from public sources, she claims to be harmed when RocketReach offers paid subscriptions to its site.

Plaintiff's inclusion in RocketReach's database does not violate IRPA because the RocketReach website falls under several statutory exemptions. Additionally, the website is protected from liability by the First Amendment and does not fall into the less-protected category of "commercial speech." Therefore, under IRPA and First Amendment caselaw, neither RocketReach's display of excerpts from its database nor its promotion of its website is subject to liability. RocketReach is further immune from liability pursuant to Section 230 of the Communications Decency Act, because the RocketReach website collects and publishes

information from third parties. Finally, Plaintiff's claim violates the dormant Commerce Clause because Plaintiff's legal theories would effectively impose Illinois law on RocketReach's nationwide business. RocketReach therefore respectfully requests that this Court dismiss Plaintiff's Complaint with prejudice for failure to state a claim upon which relief can be granted.

## I. FACTS

### A. The RocketReach Website

Defendant RocketReach, LLC, operates a website that allows users to search for and find professional contact information. (Compl. ¶¶ 13, 14.) RocketReach "compiles" the information, "in part, from corporate websites, and social media accounts." (*Id.* ¶ 13.) Plaintiff alleges that RocketReach violated IRPA because Plaintiff's name was searchable on RocketReach's website and could have been presented to a prospective customer along with the option to purchase a paid subscription to the website.

The allegations of the Complaint make any further description of RocketReach's website and business difficult because Plaintiff misstates the website's contents. RocketReach requests that the Court take judicial notice of screenshots of RocketReach's website provided in the Declaration of Christopher Long, attached hereto as Exhibit 1, which are described in greater detail below.

The Court may take judicial notice of RocketReach's website because its contents are referenced, partially quoted, and partially reproduced throughout the Complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 n.13 (2007) (stating that court "was entitled to take notice of the full contents of the published articles referenced in the complaint, from which the truncated quotations were drawn"); *Wright v. Assoc. Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (affirming consideration of agreement attached to Rule 12(b)(6) motion to dismiss where

plaintiff "repeatedly quotes from and refers to the Agreement in his complaint"). Plaintiff's sole claim against RocketReach is entirely based on the layout of RocketReach's website; the layout of the website is "central to her claim." *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."). Courts may also take judicial notice of a party's website. *See Sroga v. Laboda*, 748 Fed. App'x 77, 78 n.1 (7th Cir. 2019) (affirming judicial notice of online contract terms); *Newbold v. State Farm Mut. Auto. Ins. Co.*, No. 13-cv-9131, 2015 U.S. Dist. LEXIS 194101, at *11, n.7 (N.D. Ill. Jan. 23, 2015) ("[C]ourts may take judicial notice of undisputed material hosted on a party's public website."). "To the extent that an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013); *Stayart v. Google Inc.*, 783 F. Supp. 2d 1055, 1057 (E.D. Wis. 2011) (noting that exhibits to plaintiff's complaint contradicted her allegation that Google's search function "uses her name for advertising purposes").

**B. Plaintiff's Complaint**

RocketReach "compiles" its "database, in part, from corporate websites, and social media accounts, and markets its database as a tool used by millions of paying customers (e.g., 'companies large and small') to power sales, recruit, and engage in marketing." (Compl. ¶ 13.) Plaintiff alleges that her contact information was available via RocketReach's website and that a hypothetical user could access her contact information. (*See id.* ¶ 15 ("When a user visits Rocket Reach's website . . . .").) She does not allege that anyone performed such a search; her counsel presumably did so to prepare the Complaint. (*See id.* ¶¶ 15, 16 (partial screenshots from

RocketReach website).) The search results for Plaintiff provide information about her but do not explicitly invite users to subscribe or otherwise pay a fee. (*Id.* ¶ 15, Figure 1.) Plaintiff alleges, however, that ads for subscription plans are adjacent to the search results, which Plaintiff calls a "Marketing Page." (*Id.* ¶ 16, Figures 2 and 3.) The ads do not mention Plaintiff. (*Id.*)

To view any search results, a user must create a free account on RocketReach's website using a verified e-mail address. (*See* Decl. of Christopher Long, attached as Ex. 1, at ¶ 5.) When the user creates the account, the website assures the user that the account is free. (*See id.* at ¶¶ 3, 5; *contra* Compl. ¶ 1 (alleging that RocketReach "sells access . . . to anybody willing to pay RocketReach for a monthly subscription").) After the user has created a free account, the user has access to RocketReach's website and can perform searches and preview search results. (*See* Ex. 1 at ¶¶ 7, 8.) The website informs the user that the user has five free "lookups" – that is, the user can access five people's contact information. (*See id.* at ¶ 8.) While the user searches the website, a toolbar at the top of the page shows how many "lookups" remain. (*See id.* at ¶¶ 8-9.) If the user has "lookups" remaining, she can click through and obtain a person's contact information. (*See id.*)

Plaintiff's Complaint omits any mention of RocketReach's free accounts. The Complaint refers to a "free search" or "'free' preview" (Compl. ¶¶ 1, 2) but seemingly alleges that a user cannot obtain any contact information without a paid subscription; that is simply not true and is contradicted by the website screenshots that are attached to this Memorandum. (*See also* Compl. ¶ 14 ("A RocketReach subscription must be purchased from its website, which allows its paying customers to perform searches on anyone in its database and obtain, *inter alia*, any individual's email address, phone number, and complete work history."); *id.* ¶ 17 ("[R]ather than offering to sell a user detailed information about a searched-for individual, RocketReach attempts to sell a

monthly subscription service that would grant the purchaser access to detailed information on anybody in its database.”).)

Plaintiff alleges a single claim under IRPA, 765 ILCS 1075/1 *et seq.* The crux of Plaintiff’s claim is not her inclusion in the database, but rather the possibility that her name and identifying information could be displayed in search results (which Plaintiff characterizes as “advertisements” or “the Marketing Page”). (*See*, *e.g.*, Compl. ¶¶ 3, 15.) Plaintiff seeks to bring a class action on behalf of “All Illinois residents whose identities were displayed on the Marketing Page.” (*Id.* ¶ 25.)

## II. STANDARD OF REVIEW

A district court may grant a motion to dismiss for failure to state a claim under Rule 12(b)(6) if it is clear that no relief can be afforded to a plaintiff based on the allegations set forth in the complaint. *See Evans v. Lederle Labs.*, 167 F.3d 1106, 1107 (7th Cir. 1999). The Court “must accept as true all the plaintiff’s well-pleaded factual allegations and the inferences reasonably drawn from them.” *Gibson v. Chicago*, 910 F.2d 1510, 1520-21 (7th Cir. 1990). The Court need not accept inferences unsupported by factual allegations, or Plaintiff’s legal conclusions. *See Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000). The Court “must consider not only the complaint itself, but also documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice.” *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013) (quotation omitted). “To the extent that an exhibit . . . referenced by the complaint contradicts the complaint’s allegations, the exhibit takes precedence.” *Id.* at 1020.

Plaintiff must allege “enough facts to state a claim to relief that is plausible on its face.” *Twombly*, 550 U.S. at 570. Claims that are merely “conceivable” cannot proceed to discovery. *Id.*

Similarly, if the alleged facts suggest only the "possibility of misconduct," the complaint should be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Courts in this District have frequently granted motions to dismiss right of publicity claims. *See, e.g.*, *Nieman v. VersusLaw, Inc.*, 512 F. App'x 635, 636 (7th Cir. 2013) (upholding dismissal of right of publicity claim); *Dobrowolski v. Intelius, Inc.*, No. 17-cv-1406, 2018 U.S. Dist. LEXIS 240434 (N.D. Ill. May 21, 2018) (dismissing IRPA claim); *Thompson v. Getty Images (US), Inc.*, No 13-cv-1063, 2013 U.S. Dist. LEXIS 91828, at *1 (N.D. Ill. July 1, 2013) (dismissing right of publicity claim).

## III. ARGUMENT

### A. Plaintiff Has Not Pled an IRPA Claim as a Matter of Law.

Plaintiff alleges a single claim under IRPA. IRPA provides that "[a] person may not use an individual's identity for commercial purposes," 765 ILCS 1075/30(a). The statute provides five exemptions at 765 ILCS 1075/35(b). These exemptions largely mirror the exemptions for First Amendment-protected content that developed relating to common-law misappropriation theories. S*ee Collier v. Murphy*, No. 02-cv-2121, 2003 U.S. Dist. LEXIS 4821, at *8 (N.D. Ill. Mar 26, 2003) (noting that exemptions help avoid "serious First Amendment problems"); *see also Dobrowolski v. Intelius, Inc.*, No. 17-cv-1406, 2017 U.S. Dist. LEXIS 138587, at *16 (N.D. Ill. Aug. 29, 2017) ("IRPA supplanted the common-law tort of appropriation of likeness (also called the right of publicity), but the statutory and common-law claims require essentially the same three elements . . . .") (citation omitted).

RocketReach did not use Plaintiff's identity for commercial purposes, and any "use"[1] is exempt under 765 ILCS 1075/35(b)(1), (2), and (4). RocketReach's database "describes" Plaintiff "in a . . . book, article, . . . or other . . . visual . . . work" and "does not constitute in and of itself a commercial advertisement for a product, merchandise, goods, or services," pursuant to 765 ILCS 1075/35(b)(1). RocketReach's "use of [Plaintiff's identity" was "for non-commercial purposes, pursuant to 765 ILCS 1075/35(b)(2). Because RocketReach's website is exempt from liability under IRPA, "promotional materials, advertisements, or commercial announcements for" the website are also exempt under 765 ILCS 1075/35(b)(4).

1. RocketReach's Website Falls Squarely In IRPA's (b)(1) Exemption.

RocketReach's website is exempt from IRPA because it is a "book," "article," or "other visual work" that "does not constitute in and of itself a commercial advertisement for a product, merchandise, goods, or services." 765 ILCS 1075/35(b)(1). The website allows users to search names, phone numbers, and professional information; it provides factual, biographical information, similar to a paper directory. (*See* Compl. ¶ 14.) Either each profile in the database is an "article"; or the website itself is analogous to a "book," or the website as a whole constitutes an "other visual work." 765 ILCS 1075/35(b)(1).

The court in *Vrdolyak v. Avvo, Inc.*, held that Avvo's online directory of attorneys was exempt under 765 ILCS 1075/35(b)(1) as a "book," characterizing Avvo's listings as "akin to the yellow pages directory." 206 F. Supp. 3d 1384, 1388 (N.D. Ill. 2016); *see also id.* at 1386

---

[1] Plaintiff does not clearly allege RocketReach "used" her identity. IRPA provides that "[a] person may not use an individual's identity for commercial purposes" and defines "commercial purpose" as "the public use or holding out of an individual's identity." 765 ILCS 1075/5, 1075/30(a). Plaintiff alleges that it was possible to search and locate her in RocketReach's database, but she does not allege that anyone performed that search or viewed her name in the list of search results that she characterizes as a "Marketing Page." A complaint should be dismissed if the alleged facts suggest only the "possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. at 679. Plaintiff's claim must fail for this reason alone.

(describing Avvo's website, which contained attorney profile pages for each attorney that could include advertisements for other attorneys; an attorney could pay a fee to keep their profile free of ads). "[T]o hold otherwise would lead to the unintended result that any entity that publishes truthful newsworthy information about individuals such as teachers, directors and other professionals, such as a newspaper or yellow page directory, would risk civil liability simply because it generated revenue from advertisements placed by others in the same field." *Id.*

Other courts have held that similar online search results linked to a person's name do not violate the person's publicity rights. In *Nieman*, the plaintiff complained about a website where, after a search, a user could access court records regarding a person, including the plaintiff, for a fee. 512 F. App'x at 636-37. The district court rejected the claim and noted that the plaintiff's name was "not being held out or used to entice anyone to buy a product." 2012 U.S. Dist. LEXIS 109069, at *12. In *Stayart v. Google Inc.*, 783 F. Supp. 2d 1055 (E.D. Wis. 2011), the plaintiff alleged that Google violated her right of publicity because, when her name was entered into the Google search engine, Google automatically suggested including the name of an erectile dysfunction drug as a search term. *Id.* at 1056. The district court rejected that theory, because "it is not unlawful to use a person's name 'primarily for the purpose of communicating information'" and because the plaintiff alleged only that Google had "enable[d] internet users to access publicly available materials connected to plaintiff's name." Id. at 1057 (quoting *Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 574 (1977)); *see also Obado v. Magedson*, No. 13-cv-2382, 2014 U.S. Dist. LEXIS 104575 (D.N.J. July 31, 2014) (dismissing, on same grounds, claim that search engines violated right of publicity by providing search results regarding plaintiff). On their face and as a matter of law, RocketReach search results, including the search

results for Plaintiff (Compl. ¶ 15, Figure 1), are not advertisements or marketing. RocketReach operates an informational website and does not hold out search results as advertisements.

2. The (b)(2) Exemption Protects RocketReach's Website.

The RocketReach website is also exempt from IRPA because, to the extent it can even be characterized as a "use" of Plaintiff's identity, any use is non-commercial under 765 ILCS 1075/35(b)(2). RocketReach's website provides information, and RocketReach's business model does not transform that information into a commercial use under IRPA.

This is true even though RocketReach sells subscriptions to the website. "If the result were otherwise, then even an editorial in The New York Times would constitute commercial speech because the newspaper seeks subscribers through advertisements." *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998) ("A speaker's publication does not lose its status as protected speech simply because the speaker advertises the publication."); *see also Collier v. Murphy*, No. 02-cv-2121, 2003 U.S. Dist. LEXIS 4821, at *6-7 (N.D. Ill. Mar. 24, 2003) (rejecting argument that television series was "a commercial product" under IRPA "because all, or practically all, plays, books, musical works, films, radio productions, or television productions are commercial"); *Thompson*, 2013 U.S. Dist. LEXIS 91828, at *2 (holding that photo licensing website did not use plaintiff's identity for commercial purpose when it provided low-quality sample images in response to user searches, which users could then pay to license). Indeed, the case *Life After Hate, Inc. v. Free Radicals Project, Inc.*, involved a video that included the plaintiff and had been used by the defendant organization in fundraising appeals. No. 18-cv-6967, 2020 U.S. Dist. LEXIS 69038, at *17 (N.D. Ill. Apr. 16, 2020). Because neither party contested that the video was "news" or "public affairs,"

the use was exempt from IRPA. *Id.*, 2020 U.S. Dist. LEXIS 69038, at *16-18. Similarly, RocketReach's website is exempt from IRPA as non-commercial speech.

Just as the website is non-commercial speech, so too are excerpts from the website. The content about which Plaintiff complains (name, title, gender, employer, city, state, nation, email address, button links to Facebook and LinkedIn profiles) is not, as Plaintiff would characterize it, an "advertisement." (Compl. Fig. 1, ¶ 16.) It is instead a content-rich preview of the information available on the website. It stands on its own as non-commercial speech. Even if a demure link near the protected content could be deemed an offer of sale of additional information, that is nothing more than what is known in the media business as an "advertising adjacency." Advertisements are placed near First Amendment-protected content all the time online and in print (those ads help pay for the creation of the protected content), but that advertising adjacency does not turn otherwise protected content into commercial speech.

3. <u>RocketReach's Search Results Also Are Exempt Under 765 ILCS 1075/35(b)(4) Because They "Promote" Or "Advertise" Exempted Uses.</u>

Plaintiff seeks to hold RocketReach liable for promoting its website, which is itself exempted from IRPA. Plaintiff's claim fails because IRPA's exemptions extend to promotion of exempted uses: IRPA does not apply to "promotional materials, advertisements, or commercial announcements for a use described under paragraph (1), (2), or (3) of this subsection." 765 ILCS 1075/35(b)(4).

To avoid this exemption, which is also found in the common law, a right of publicity claimant must show use of her identity in an advertisement for an unrelated product. As discussed above, IRPA's legislative history provides two such examples: a bus ad for hair tonic, or a mop that dances like Fred Astaire. *See Thompson*, 2013 U.S. Dist. LEXIS 91828, at *6 (describing and citing IRPA legislative history). By contrast, courts routinely dismiss cases

challenging the promotion of a work in which the plaintiff appears. *See, e.g.*, *Rogers v. Grimaldi*, 875 F.2d 994, 1004 (2d Cir. 1989) (affirming dismissal of common-law right of publicity claim where movie title used actress's name, but name was not "wholly unrelated" to subject of the movie and not "used to promote or endorse a collateral commercial product").

The case of *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316 (11th Cir. 2006), illustrates why this category of exemption is necessary. In that case, the plaintiff complained that Amazon's website displayed her picture on the cover of a book that was available for sale. The court noted that "Amazon's use of book cover images is not an endorsement or promotion of any product or service, but is merely incidental to, and customary for, the business of internet book sales." *Id.* at 1326. Amazon's use of the plaintiff's image could not "be distinguished from Amazon's customary display of book cover images." *Id.* The court analogized Amazon's website to "a customer's experience browsing book covers in a traditional book store." *Id.*

In *Dobrowolski v. Intelius, Inc.*, the court applied these principles to an IRPA claim that, like this case, concerned websites that provided reports containing individuals' personal information and the websites' display of search results. No. 17-cv-1406, 2018 U.S. Dist. LEXIS 240434 (N.D. Ill. May 21, 2018). The court dismissed the IRPA claim because "[t]he plaintiffs' identities are not used to promote a separate product—they are used because plaintiffs' identities are part of the product offered for sale." *Id.*, 2018 U.S. Dist. LEXIS 240434, at *10.

In this case, as in *Almeida*, RocketReach provides free access to its website to potential paying customers "as a matter of business practice." *Id.* RocketReach did not select Plaintiff's profile to highlight, and Plaintiff's availability on the RocketReach website cannot "be distinguished from" RocketReach's "customary display of" its website. *Id.* Plaintiff's availability on RocketReach's website "is not an endorsement or promotion of any product or service." *Id.*

As in *Dobrowolski*, Plaintiff's identity is "not used to promote a separate product—[it is] used because [Plaintiff's] identit[y is] part of the product offered for sale." 2018 U.S. Dist. LEXIS 240434, at *10. If Plaintiff's legal theory were correct, then there would be no way for RocketReach to assure prospective subscribers of the quality of its database. RocketReach's promotion of its website is thus exempt under 765 ILCS 1075/35(b)(4).

4. A Ruling In RocketReach's Favor Is Consistent With Northern District Caselaw.

This case is one of several cases pending in the Northern District of Illinois regarding similar (but not identical) websites. Another Northern District judge has issued certain rulings in *Lukis v. WhitePages*, but those decisions do not control here for several reasons.[2] 454 F. Supp. 3d 746 (N.D. Ill. 2020). First, the *Lukis* court did not fully consider many of the IRPA and First Amendment arguments raised in this Memorandum, finding them not fully presented or waived by the parties in that case. *See id*. 762-63 (noting the record did not contain the "background report" the plaintiff objected to); *see also Lukis v. Whitepages Inc.*, Nos. 19-cv-4871 and 19-cv-4892, 2020 U.S. Dist. LEXIS 199691 (N.D. Ill. Oct. 27, 2020) (finding argument about IRPA Exemption 2 waived and First Amendment defense not sufficiently argued).

Additionally, *Lukis* applies a definition of "commercial purpose" that is too broad and is inconsistent with case law. *Lukis*, 454 F. Supp. at 760. Regardless, the RocketReach website does not qualify as a "commercial purpose" even under *Lukis*. As explained above, case law interprets a "commercial purpose" under IRPA to be use of a person's identity "to promote or entice the purchase of some *other* product." *See Thompson*, 2013 U.S. Dist. LEXIS 91828, at *5 (emphasis added). The cases the *Lukis* court cited to support commercial use all involved the

[2] In fact, Northern District courts have been more likely to find website uses protected. *See, e.g.*, *Avvo*, 206 F. Supp. 3d at1388; *Nieman*, 512 F. App'x at 636; *Dobrowolski*, 2018 U.S. Dist. LEXIS 240434, at *10-11; *Thompson*, 2013 U.S. Dist. LEXIS 91828, at *1.

promotion of *other* products or services. *Lukis*, 454 F. Supp 3d at 760 (citing *Trannel v. Prairie Ridge Media, Inc.*, 2013 IL App (2d) 120725 (use of plaintiff's photo on media kit to sell services); *Blair v. Nev. Landing P'ship*, 369 Ill. App. 3d 318 (Ill. App. 2006) (use of plaintiff's picture to promote steakhouse); *Gabiola v. Sarid*, 2017 U.S. Dist. LEXIS 157699 (N.D. Ill Sept. 26, 2017) (use of plaintiffs' arrest photos to solicit subscription removal service). Here, RocketReach users can create free accounts that allow them to access RocketReach's website, perform searches, and view profiles. (*See* Ex. 1 at ¶¶ 7-9.) RocketReach provides free access to its website to demonstrate the same product – its website. RocketReach is exempt from IRPA.

**B. The First Amendment Bars Plaintiff's Claim.**

Even if the Court holds that IRPA applies in this case, Plaintiff nonetheless seeks an impermissible content-based restriction on RocketReach's protected speech. RocketReach's website is protected First Amendment speech and therefore exempt from IRPA liability. *See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.").

Content-based restrictions on protected speech are "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). The application of IRPA to RocketReach's website would not survive this strict scrutiny. The accessibility of information about Plaintiff on RocketReach's website does not impact Plaintiff's ability to earn a livelihood or "reap the reward of [her] endeavors." *Zacchini*, 433 U.S. at 573. By contrast, prohibiting RocketReach from providing users with a limited free subscription and allowing

those free subscribers to view search results would unduly burden RocketReach and impede RocketReach users.

1. RocketReach's Website Is Protected First Amendment Expression.

*a) The First Amendment Protects Databases Like RocketReach's.*

"[T]he creation and dissemination of information are speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011). The First Amendment protects directories of names, addresses, phone numbers, and other identifying information. *See, e.g.*, *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 962 (9th Cir. 2012) ("[Y]ellow pages directories qualify for full protection under the First Amendment."); *Avvo*, 206 F. Supp. 3d at 1388 (noting that online directory of lawyers is "constitutionally protected speech"); *Health Sys. Agency of N. Va. v. Va. State Bd. of Med.*, 424 F. Supp. 267, 272–73 (E.D. Va. 1976) (finding directory of physicians protected by First Amendment because directory "contains information of interest to people who need physicians" so they do not need "to question individual physicians in order to choose those who will best satisfy their needs").

RocketReach publishes an online database of information about people. From a constitutional perspective, there is no distinction between RocketReach's database and a yellow pages directory, *Dex*, 696 F.3d at 962, a directory of attorney information, *Vrdolyak*, 206 F. Supp. 3d at 1389, or a physician directory, *Health Sys. Agency*, 424 F. Supp. at 272.

*b) The RocketReach Website Is Not Commercial Speech Under First Amendment Jurisprudence.*

RocketReach's directory is entitled to full protection under the First Amendment; it does not fall into the category of "commercial speech," which enjoys only limited protection. "Speech that does no more than propose a commercial transaction falls within the core notion of commercial speech, but other communications also may constitute commercial speech

notwithstanding the fact that they contain discussions of important public issue." *Vrdolyak*, 206 F. Supp. 3d at 1387 (quotations omitted). "[T]he Seventh Circuit has listed relevant considerations to include 'whether: (1) the speech is an advertisement; (2) the speech refers to a specific product; and (3) the speaker has an economic motivation for the speech.'" *Id.* (quoting *U.S. v. Benson*, 561 F.3d 718, 725 (7th Cir. 2009)). The determination rests on "the commonsense distinction between speech proposing a commercial transaction . . . and other varieties of speech." *Genus Lifesciences Inc. v. Lannett Co.*, 378 F. Supp. 3d 823, 845 (N.D. Cal. 2019) (quoting *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 64 (1983)).

The Court should evaluate RocketReach's website as a whole and not merely in the context of the pricing information to which Plaintiff objects. For example, in *Dex Media* the Ninth Circuit recognized that yellow pages phonebooks "contain components of both commercial and noncommercial speech" and "consider[ed] how they are to be evaluated by analyzing 'the nature of the speech taken as a whole' to determine what level of First Amendment protection the yellow pages directories receive." *Id.* at 957 (quoting *Riley v. Nat'l Fed'n of the Blind of N.C.*, 487 U.S. 781, 796 (1988)). In *Avvo,* the court held that Avvo's attorney directory is "akin to the yellow pages directory, which receives First Amendment protection," and "Sponsored Listings" in the directory did not turn the entire directory into commercial speech. 206 F. Supp. 3d at 1388-89. In a case involving a written guide to nutritional products, the court noted the "sheer number of products" mentioned in the guide in concluding that it was not commercial speech. *Ariix, LLC v. Nutrisearch Corp.*, No. 17-cv-320, 2018 U.S. Dist. LEXIS 48527 (S.D. Cal. Mar. 23, 2018). In *Exeltis USA Inc. v. First Databank, Inc.*, No. 17-cv-04810, 2017 U.S. Dist. LEXIS 210482 (N.D. Cal. Dec. 21, 2017), where plaintiffs complained about information in a database of prescription drug information, the court looked

not only to the database entry for the specific drug at issue but also to the entire database to determine the level of First Amendment protection.

RocketReach's database does not propose a commercial transaction at all. Its function, much like a phone book or Yellow Pages, is to disseminate facts (i.e., contact information) about individuals. Other courts examining databases have also concluded that a database is not commercial speech even if the information in the database might ultimately be used to facilitate a commercial transaction. In *Exeltis*, the court noted that a database of prescription drug information was "not promoting any of the pharmaceutical products," that the database owner "is not a party to [ ] transactions" that would flow from the database information, and that the database owner had no "financial incentive in payors' reimbursement decisions" that might be based on the database information. *Id.*, 2017 U.S. Dist. LEXIS 210482, at *12, 18. "That a publisher compiles information, or even provides its own interpretation of that information, for commercial actors is not enough to transform it into commercial speech." *Id.*, 2017 U.S. Dist. LEXIS 210482, at *17-18; *see also Genus Lifesciences*, 378 F. Supp. 3d at 845 (noting that prescription drug database provider's "interest is in having a comprehensive list of pharmaceutical products, not that any particular pharmaceutical product should be more successful than another" and finding "no facts to distinguish the guide from information found in general reference materials, such as directories or encyclopedias").

Similarly, the RocketReach website provides information to RocketReach's users about third parties. Although RocketReach users may use the database information for business purposes, RocketReach itself does not profit from any potential transactions between its users and the people who are searched on its website. (*See* Compl. ¶ 13.) *See Exeltis*, 2017 U.S. Dist. LEXIS 210482, at *17-18 ("[T]here is no ready limiting principle under Plaintiff's proposal: any

speech could be commercial if eventually relied on by third-party actors who conduct business. A newspaper article, for example, could be considered 'commercial speech' simply because the newspaper company sells newspapers and third-parties base decisions on information they read in the newspaper."). Like the directory providers in *Dex*, *Avvo*, *Ariix*, *Exeltis*, and *Genus*, RocketReach's interest is in providing comprehensive and accurate search results that will attract paying subscribers.

RocketReach's profit motive in running its website also does not make the website commercial speech. Other courts considering online subscription databases have reached the same conclusion. "The for-profit nature of the defendants' aggregation websites does not change the analysis; speech is protected even when carried in a form that is 'sold' for profit." *Nieman*, 512 Fed. App'x at 638. In *Carafano v. Metrosplash, Inc.*, the plaintiff claimed that an online dating website was commercial speech because the business "is dependent on enticing free trial members to become paying members through access to profiles for a certain period, and that Matchmaker must sell memberships to customers to stay in business." 207 F. Supp. 2d 1055, 1074. The district court rejected that argument and stated that making "a profit from selling memberships does not transform the speech at issue into commercial speech." *Id.* "If a newspaper's profit motive were determinative, all aspects of its operations—from the selection of news stories to the choice of editorial position—would be subject to regulation if it could be established that they were conducted with a view toward increased sales." *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 385 (1973). "[T]he First Amendment protections available to newspapers and similar media do not apply only to those institutions of the type who have played an historic role in our democracy," the *Dex Media* court emphasized. "Ultimately, we do not see a principled reason to treat telephone directories differently from

newspapers, magazines, television programs, radio shows, and similar media that does not turn on an evaluation of their contents." 696 F.3d at 965 (quotations omitted). RocketReach's website is not commercial speech and is entitled to full First Amendment Protection.

2. RocketReach's Promotion Of Its Own Website Is Protected Under The First Amendment Because The Content Itself Is Protected.

RocketReach displays search results from its database on its website. Plaintiff characterizes these search results as "advertisements." They are, however, protected under the First Amendment on the same grounds as the database itself. As with IRPA exemptions, First Amendment protections extend to promotion of protected speech.

When an advertisement promotes an activity that is protected by the First Amendment, the advertisement receives the same protection as the underlying activity. *See Bolger*, 463 U.S. at 67 n.14. "A speaker's publication does not lose its status as protected speech simply because the speaker advertises the publication." *Commodity Trend Serv.*, 149 F.3d at 685. Under this principle, a magazine could refer to a celebrity interview that it had published when soliciting new subscribers "so long as the advertising does not falsely claim that the public figure endorses that news medium," *Cher v. Forum Int'l, Ltd.*, 692 F.2d 634, 638-39 (9th Cir. 1982). A newspaper could sell copies of newspaper pages in poster form "to advertise the quality and content of its newspaper." *Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 796-97 (Cal. Ct. App. 1995); *see also Esch v. Universal Pictures Co.*, No. 6:09-cv-2258, 2010 U.S. Dist. LEXIS 140543, at *19 (N.D. Ala. Nov. 1, 2010) (movie trailer); *Page v. Something Weird Video*, 960 F. Supp. 1438, 1444 (C.D. Cal. 1996) (advertising movies re-released on video).

RocketReach provides limited, free access to its First Amendment-protected website to demonstrate the quality and content of the database and search capabilities to potential paid

subscribers. Under prevailing law, it is entitled to do so with the same level of protection from liability that the database itself enjoys.

**C. RocketReach Is Immune Under the Communications Decency Act.**

Section 230 of the Communications Decency Act ("Section 230") bars Plaintiff's claim because Plaintiff alleges RocketReach is merely re-publishing third-party content. Under Section 230, RocketReach cannot be liable for content it did not create. Section 230 provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The statute, "while not granting blanket immunity to interactive computer services, defines who can be called a 'publisher' for purposes of civil liability." *Hadley v. GateHouse Media Freeport Holdings, Inc.*, No. 12-cv-1548, 2012 U.S. Dist. LEXIS 98674, at *3 (N.D. Ill. July 10, 2012). Section 230 thus bars any claim that would require (1) "an online information system" to (2) "be treated as the publisher or speaker" of (3) "any information provided by someone else." *Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008) (quotations omitted).

First, RocketReach is an "online information system" under Section 230 because it owns and operates a public website. (Compl. ¶ 1.) *See Hadley*, 2012 U.S. Dist. LEXIS 98674, at *4 (stating that websites that "enable multiple users access to the server that hosts the website" fall within Section 230).

Second, Plaintiff seeks to treat RocketReach as a "publisher or speaker," however, her claim is premised on RocketReach's distribution of third-party content. *See Chi. Lawyers' Comm.*, 519 F.3d at 671 (holding that Section 230 barred housing discrimination claim against website hosting allegedly discriminatory housing ads); *see also Ben Ezra, Weinstein, & Co. v.*

*Am. Online Inc.*, 206 F.3d 980, 983, 985–86 (10th Cir. 2000) (holding that Section 230 barred claims for publishing inaccurate stock price information from third-party providers); *Parker v. Paypal, Inc.*, No. Civ. 16-4786, 2017 U.S. Dist. LEXIS 130800, at *15-17 (E.D. Pa. Aug. 16, 2017) (holding that Section 230 barred right of publicity claim for including allegedly counterfeit books in online store). Plaintiff complains about decisions that RocketReach made as a re-publisher of third-party content, such as the type and location of content it provides. *See Force v. Facebook, Inc.*, 934 F.3d 53, 66 (2d Cir. 2019) (holding that Facebook was immune under Section 230 when it chose where "third-party content should reside and to whom it should be shown"); *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 21 (1st Cir. 2016) (finding Backpage immune under Section 230 because claims against it "address the structure and operation of the Backpage website, that is, Backpage's decisions about how to treat postings"). This is the type of claim that Section 230 protects against.

Third, the Complaint confirms that RocketReach is simply disseminating "information provided by someone else." *Chi. Lawyers' Comm.*, 519 F.3d at 671. According to Plaintiff, her claim is based on re-publication of "identifying information" that she alleges RocketReach "compiles" from "corporate websites" and "social media accounts," i.e., third-party content. (Compl. ¶ 13.) Section 230 immunity applies even though RocketReach makes third-party information available via a search function; RocketReach does not become a content provider under Section 230 when it makes information accessible via searches. *Force,* 934 F.3d at 65-71; *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1270 (9th Cir. 2016); *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 969 (N.D. Ill. 2009). RocketReach's use of information in the format that Plaintiff characterizes as "advertisements" also does not remove immunity, because "disseminating the same content in essentially the same format . . . does not change the origin of the third-party

content." *Kimzey*, 836 F.3d at 1270. RocketReach did not "provide[ ], create[ ], or develop[ ] any portion of the content that [Plaintiff] alleges harmed" her; it merely serves as a conduit for information "provided by third part[ies]." *Klayman v. Zuckerberg*, 753 F.3d 1354, 1358 (D.C. Cir. 2014); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 331–32 (4th Cir. 1997); *Force*, 934 F.3d at 65.

Applying these principles, a California district court recently granted immunity under Section 230 to a website operating a paid subscription database. *Callahan v. Ancestry.com Inc.*, involved a database of old yearbook photos. No. 20-cv-8437, 2021 U.S. Dist. LEXIS 37811 (Mar. 1, 2021). The plaintiffs objected to their inclusion in the database and to Ancestry's sales pitch for paid subscription access. The court held that the yearbook photos were "created entirely by third parties," *Id*., 2021 U.S. Dist. LEXIS 37811, at *15 (quotation omitted). Organizing the photos into a database did not "create content" and "just add[ed] functionality." *Id.*, 2021 U.S. Dist. LEXIS 37811, at *16. The court held that the website owner "did not contribute materially to the content" and was immune under Section 230. *Id.*, 2021 U.S. Dist. LEXIS 37811, at *17 (quotation omitted).

In the *Lukis* case, the court denied Section 230 protection to Whitepages because "it is alleged to have actively compiled and collated, from several sources, information regarding" the plaintiff. 454 F. Supp. 3d 746, 763 (N.D. Ill. 2020). That ruling is out of step with prevailing precedent. Compiling content, however "actively," does not remove an activity from Section 230 immunity if the content originated with third parties. Additionally, *Lukis* relies on *Huon v. Denton*, 841 F.3d 733 (7th Cir. 2016), asserting that the Seventh Circuit held "that the CDA did not protect Gawker from liability where it 'edited, shaped, and choreographed' the content of the comments it published online." *Lukis*, 454 F. Supp. 3d at 763. The crucial allegation in *Huon*

was that "at least some of the allegedly defamatory comments were authored by Gawker employees." 841 F.3d at 743 (emphasis added). Plaintiff has not alleged that RocketReach authored the information about her in its database. (*See*. Compl ¶ 13.)

**D. The Dormant Commerce Clause Bars Plaintiff's Claim.**

Plaintiff's claim also runs afoul of the "dormant" Commerce Clause, which "precludes the application of a state statute" in a manner that has "the practical effect of . . . control[ling] conduct beyond the boundaries of the State," "whether or not the commerce has effects within the State"—preventing "inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336-37 (1989). Facially neutral statutes that create a disparate impact on interstate commerce are analyzed under *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970). Under *Pike*, a facially neutral state law violates the Commerce Clause if "the burden imposed on [interstate] commerce" is "excessive in relation to the local interests served by the statute." *Nat'l Solid Wastes Mgmt. Ass'n v. Meyer*, 63 F.3d 652, 663 (7th Cir. 1995).

If IRPA applies to search results on RocketReach's website in the way Plaintiff alleges, then the statute burdens RocketReach's ability to engage in interstate commerce in a way that is wholly out of proportion to the *de minimis* state interest in suppressing those results. The intended legislative aims of IRPA – protecting against commercial use of identities in false endorsements of products – are not reasonably connected to RocketReach's display of search results, so the state interest at stake is negligible at best. *See Thompson*, 2013 U.S. Dist. LEXIS 91828, at *6 (citing and describing legislative history addressing misleading product endorsements).

By comparison, the burden on interstate commerce from applying IRPA as Plaintiff proposes would far outweigh the negligible state interest. RocketReach's web-based business is nationwide and interstate. *See Am. Booksellers Found. v. Dean*, 342 F.3d 96, 103 (2d Cir. 2003) ("Because the internet does not recognize geographic boundaries, it is difficult . . . for a state to regulate internet activities without 'project[ing] its legislation into other States."') (citation omitted). If IRPA forbids RocketReach's search results, then RocketReach must either block search results from displaying to users physically located in Illinois (if such a thing were technically possible); or omit Illinois residents from its database, which does not itself contain residential addresses; or comply with the purported IRPA restrictions nationwide, even in states that do not have right of publicity statutes or those with a narrower scope. Illinois state law cannot impose such extraordinary interference on interstate commerce. Plaintiff's broad interpretation of IRPA is untenable and unconstitutional.

## IV. CONCLUSION

RocketReach's website does not violate IRPA; it is protected from liability by the First Amendment; it is immune pursuant to Section 230 of the Communications Decency Act; and application of IRPA to RocketReach's website would violate the dormant Commerce Clause.

WHEREFORE, Defendant RocketReach, LLC, respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice for failure to state a claim upon which relief can be granted and provide such further relief as is just.

June 10, 2021

Respectfully submitted,

ROCKETREACH LLC

By: /s/ Steven L. Baron
One of its attorneys

Steven L. Baron (ARDC #6200868)
Brendan J. Healey (ARDC #6243091)
Sharon R. Albrecht (ARDC #6288927)
Barron Harris Healey
150 South Wacker Drive
Suite 2400
Chicago, IL 60606
(312) 741-1027
sbaron@bhhlawfirm.com
bhealey@bhhlawfirm.com
salbrecht@bhhlawfirm.com

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing has been served on June 10, 2021, via the Court's CM/ECF system, on all counsel of record who have consented to electronic service.

/s/ Steven L. Baron