```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION
```

Aimee Krause, individually and )
on behalf of all others )
similarly situated )
                                                  )
     Plaintiff, )
                                                  )
   v. ) No. 21 CV 1938
                                                  )
RocketReach, LLC, a Wyoming )
limited liability company )
                                                  )
     Defendant. )
                                                  )

<u>Memorandum Opinion and Order</u>

The class action complaint in this case alleges that defendant RocketReach, which owns and operates a website offering paid subscription access to "the world's largest and most accurate database of emails and direct dials," Compl. at ¶ 13, violates the Illinois Right of Publicity Act, 765 ILCS 1075/10, by using plaintiff's and the class members' identities for a commercial purpose without their consent. Specifically, defendant allegedly encourages prospective customers to perform free "people searches" on its website by typing in a searched individual's first and last name. The result of such a search is a preview page featuring the searched individual's full name along with certain uniquely identifying information, including location, work history, and education. Compl. at ¶ 2. The goal of this "preview" page is allegedly twofold: first, it shows the potential customer that

defendant's database contains information about the specific searched-for individual; and second, it offers a paid subscription service that allows customers to access additional information not only about the individual featured in the preview, but also about every individual in defendant's database. *Id*. In other words, defendant uses plaintiff's and the class members' identities not to sell information about those individuals, but rather to sell a subscription service. And because defendant does so without obtaining their prior written consent, it violates the IRPA.

Defendant moves to dismiss the complaint on four broad grounds: that the conduct plaintiff alleges falls within one or more of the IRPA's exemptions; that the First Amendment protects defendant's publications and bars plaintiff's claims; that defendant is immune from liability under the Communications Decency Act; and that plaintiff's claim runs afoul of the "dormant" Commerce Clause. Because none of these arguments survives scrutiny, the motion is denied.

I.

Plaintiff alleges that RocketReach violates the provision of the IRPA that states, "[a] person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent...." 765 ILCS 1075/30(a). To state a claim under this provision, plaintiff must plead (1) the appropriation of her identity, (2) without her consent,

2

(3) for defendant's commercial benefit. *Dancel v. Groupon, Inc.*, 949 F.3d 999, 1008 (7th Cir. 2019). Defendant does not meaningfully contend that plaintiff fails to allege each of these elements. In a footnote, defendant suggests that plaintiff has not adequately alleged "use" of her identity because she does not assert that anyone performed a search of defendant's database using her name. But plaintiff alleges plainly that "Defendant used Plaintiff's and the putative class members' identities on its Marketing Pages, which display the individuals found within its records that match searched-for names, alongside uniquely identifying information such as each person's location, employer name, job title, and links to social media profiles. This information serves to identify such individuals to a reasonable audience." Compl. at ¶ 36. Additionally, the complaint illustrates the alleged use of her name with an image of what appears to be the result of a search for "Aimee Krause." *Id*. at ¶ 16. Nothing more is required at this stage.

## IRPA Exemptions

The bulk of defendant's argument is not directed to the elements of plaintiff's claim but rather asserts that her claim fails because it is based on conduct that falls within one or more of the exemptions the statute contemplates. This argument, however, is in the nature of an affirmative defense, and it does not support dismissal unless the complaint itself facially establishes each element of the defense. *See Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406, 2017 WL

3

3720170, at *9 (N.D. Ill. Aug. 29, 2017) (*Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) ("a plaintiff ordinarily need not anticipate and attempt to plead around affirmative defenses."). That is not the case here, and in fact, defendant's effort to squeeze plaintiff's allegations into the framework of its affirmative defenses misconstrues the nature of her claim.

Defendant asserts three of the IRPA's exemptions as grounds for dismissal. The first provides that the statute does not apply to "use of an individual's identity in an attempt to portray, describe, or impersonate that individual in a live performance, a single and original work of fine art, play, book, article, musical work, film, radio, television, or other audio, visual, or audio-visual work, provided that the performance, work, play, book, article, or film does not constitute in and of itself a commercial advertisement for a product, merchandise, goods, or services." 765 ILCS 1075/35(b)(1). Defendant argues that its website provides "factual, biographical information similar to a paper directory," and that "each profile in the database is an "article"; or the website itself is analogous to a "book," or the website as a whole constitutes an "other visual work." Mem. at 7. Like the defendants' argument in *Lukis v. Whitepages Inc.*, this argument "misses the point." 454 F. Supp. 3d 746, 762 (N.D. Ill. 2020). Plaintiff does not challenge her inclusion in defendant's database; what she objects to is the display of her name and personally identifying information in a "preview" intended

4

to solicit subscriptions to defendant's paid service. As the *Lukis* court explained, "[e]ven indulging the generous assumption that the free previews qualify as a 'performance, work, play, book, article, or film,' they are alleged to be 'a commercial advertisement for a product, ... goods, or services,'" specifically, the defendant's monthly subscription services, "and thus fall outside the scope of Section 35(b)(1) given the provision's 'provided that' clause." *Id*. The same result obtains on the allegations here.

The analysis under Section 35(b)(2) of the IRPA, which exempts non-commercial uses of an individual's identity, including "any news, public affairs, or sports broadcast or account, or any political campaign"—similarly tracks the one in *Lukis*. Defendant argues that because its website "provides information," it is exempt from the IRPA, notwithstanding that its "business model" relies on monthly subscriptions. But plaintiff does not challenge defendant's business model; what she objects to is the use of her identity in free "previews" that are allegedly used for the commercial purpose of promoting defendant's subscription service. *See* Compl. at ¶¶ 18, 37. These allegations do not establish an affirmative defense under Section 35(b)(2). *See Lukis*, 454 F. Supp. 3d at 762 ("free previews" alleged to promote subscription service not exempt under Section 35(b)(2) at pleadings stage).

The last exemption defendant asserts precludes IRPA liability for uses of an individual's identity based on "promotional materials,

advertisements, or commercial announcements for a use described" in the foregoing exemptions. Accordingly, defendant's argument based on this section falls with the previous two, as the pleadings do not establish the underlying exempted used. Moreover, defendant's reliance on *Dobrowolski* for its exemption argument is misguided. Not only did the *Dobrowolski* court expressly decline to reach the defendant's arguments based on affirmative defenses as noted previously, but the proposition for which defendant cites Dobrowolski here—that plaintiff's identity was "not used to promote a separate product" but is used because her identity is "part of the product offers for sale"—is at odds with the allegations of this case, which more closely resemble those in *Lukis*.[1]

### First Amendment

Defendant's arguments grounded in the First Amendment fare no better. "Because the degree of protection afforded by the First Amendment depends on whether the activity sought to be regulated constitutes commercial or non-commercial speech," *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 65 (1983), defendant begins by insisting that its database is merely a "directory" that "does not

---

[1] Defendant acknowledges *Lukis* but argues that it does not "control" here. Mem. at 12. While it is true, of course, that another district court's interpretation of the IRPA does not "control" my analysis, Judge Feinerman's discussion of its application in that case—whose allegations are more closely aligned with those here than are the allegations in cases such as *Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384 (N.D. Ill. 2016), and *Thompson v. Getty Images (US), Inc.*, No. 13 C 1063, 2013 WL 3321612 (N.D. Ill. July 1, 2013), which defendant cites—is persuasive.

6

propose a commercial transaction" and is entitled to full First Amendment protection. As noted above, however, plaintiff's IRPA claim does not challenge her inclusion in defendant's "directory," but rather asserts that defendant's use of her identity without her consent to entice customers to purchase its subscription service is prohibited by the statute. Her allegations not only describe "a textbook example under the IRPA of using a person's identity for a commercial purpose," *Lukis*, 454 F. Supp. 3d at 760, they also satisfy the constitutional test for commercial speech.

"To determine whether speech falls on the commercial or noncommercial side of the constitutional line, the Court has provided this basic definition: Commercial speech is 'speech that proposes a commercial transaction.'" *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 516 (7th Cir. 2014) (quoting *Bd. of Trustees of State Univ. of New York v. Fox*, 492 U.S. 469, 482 (1989)). *See also id*. at 517 (additional considerations include "whether: (1) the speech is an advertisement; (2) the speech refers to a specific product; and (3) the speaker has an economic motivation for the speech." (quoting *United States v. Benson*, 561 F.3d 718, 725 (7th Cir. 2009) (citing *Bolger*, 463 U.S. at 66-67))). The activity complaint articulates activity speech meeting all of these criteria.

According to the complaint, the "preview" webpage that is displayed when a user searches "Aimee Krause" features summary information about plaintiff followed by the statement "Found phones:

7

[4 available on +Phone plans](#)." Compl. at ¶ 16. Clicking on this hyperlink opens a new page that invites the user to "Get direct **dial phone numbers** on lookups with **+Phone Plans**!" and displays a button labeled, "View Plans Now." A user who clicks this button is offered three plans available for purchase on either a monthly or an annual basis at prices ranging from $69 per month for 1,920 lookups a year to $279 per month for 10,000 lookups a year. *Id*. A user can, it appears, proceed to the purchase of one of these subscriptions by clicking a further button labeled, "Select Plan." *Id*. Taken together, these screens not only propose but also allow users to complete a commercial transaction.

Defendant nevertheless suggests that because the database itself does not propose a commercial transaction, its entire website—including the pages described above—are non-commercial speech entitled to unfettered First Amendment protection. But defendant's reliance for this proposition on cases such as *Ariix, LLC v. Nutrisearch Corp.*, No. 17-cv-320, 2018 U.S. Dist. LEXIS 48527 (S.D. Cal. Mar. 23, 2018), and *Exeltis USA Inc. v. First Databank, Inc.*, No. 17-cv-4810, 2017 U.S. Dist. 210482 (N.D. Cal. Dec. 21, 2017), shows just how far afield of the present context defendant must reach for support. The plaintiff in *Ariix* asserted a Lanham Act claim based on the theory that the defendant's failure to award plaintiff a "Gold Medal of Achievement" in an industry guide to nutritional supplements amounted to false representations about plaintiff's product, while

8

the *Exeltis USA* plaintiff sought a prior restraint on allegedly misleading information about its product's prescription status. Both of these cases involved publications in the highly regulated food and drug industry, and neither sheds any meaningful light on whether defendant's use of plaintiff's name and personal information next to a hyperlink offering to sell a variety of subscription services is commercial speech for First Amendment Purposes. And while defendant's citations to *Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1389 (N.D. Ill. 2016) (online attorney directory that includes "Sponsored Listings" not commercial speech), *Nieman v. VersusLaw, Inc.*, 512 F. App'x 635, 637 (7th Cir. 2013) (judicial records published in commercial databases not commercial speech), and *Carafano v. Metrosplash, Inc.,* 207 F. Supp. 2d 1055 (C.D. Cal. 2002) (profiles published by third-party users of dating website not commercial speech), are closer to the mark, none of these cases involves describes the type of transaction proposed by defendant's website, and none supports dismissal on the allegations here.[2]

## Communications Decency Act

Nor am I persuaded that plaintiff's claim is barred by the Communications Decency Act, which provides that "[n]o provider or user of an interactive computer service shall be treated as the

---

[2] Because defendant places all of its eggs in the basket of its argument that plaintiff's claim targets only non-commercial speech, I need not reach plaintiff's argument that her claim is consistent with the lesser protections the First Amendment affords commercial speech.

publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). "As the Seventh Circuit has explained, the CDA applies to online forums serving as 'a mere passive conduit for disseminating [actionable] statements.'" *Lukis* 454 F. Supp. 3d at 763 (quoting *Huon v. Denton*, 841 F.3d 733, 742 (7th Cir. 2016)). The complaint's description of defendant's website is inconsistent with the inference that it functions as a "passive conduit." Plaintiff's theory is that defendant selects a portion of the information its database contains about a searched-for individual and displays it as bait to entice users to purchase subscriptions granting them access to additional information not only about that individual but about anyone in the database. In *Huon*, the Seventh Circuit acknowledged that an online platform cannot be held liable as the passive publisher of content provided by "another information content provider" but reversed the district court's conclusion at the pleadings stage that the Communication Decency Act barred the plaintiff's claim for defamation where the defendant allegedly "edited," "shaped," and "choreographed" content provided by others. While it may be, as defendant contends (again in the context of an affirmative defense on which defendant bears the burden of proof) that the information in defendant's database is exclusively provided by "another information content provider," the complaint alleges that defendant curated that information for commercial gain and used plaintiff's and the class members' identities to do so.

10

These allegations, on their face, do not establish that the Communications Decency Act shields defendants from liability under the IRPA. See Lukis 454 F. Supp. 3d at 763 (declining to dismiss IRPA claim against defendant "alleged to have actively compiled and collated, from several sources, information regarding" the plaintiff).

## "Dormant" Commerce Clause

Defendant's final argument is that plaintiff's claim runs afoul of the "dormant" Commerce Clause, which "precludes states and municipalities from erecting obstacles to interstate commerce even where Congress has not regulated." *Regan v. City of Hammond, Indiana*, 934 F.3d 700, 702 (7th Cir. 2019). Defendant argues that applying the IRPA to bar its use of plaintiff's and the class members' identities "burdens RocketReach's ability to engage in interstate commerce in a way that is wholly out of proportion to the *de minimis* state interest in suppressing those results." Mem. at 22. But this plainly is not an argument that can be resolved on the pleadings.

As the Seventh Circuit has observed, "[t]he fact that a state or municipal law affects interstate commerce in some way is by itself insufficient to render the law suspect under the commerce clause, as almost any local regulation is bound to touch upon interstate commerce." *Regan* 934 F.3d at 702 (7th Cir. 2019). *See also Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 837 (9th Cir. 2014) (reversing district court's conclusion that applying

Washington's Personality Rights Act to Jimi Hendrix's "limited, non-speculative" post-mortem right to publicity claim gave the statute an "impermissible extraterritorial reach" in violation of the dormant Commerce Clause). In other words, the analysis necessarily involves a balancing test. The complaint simply does not plead the kinds of facts necessary to determine whether the interests served by application of the IRPA to the claim here outweigh the burden, if any, on interstate commerce.

## II.

For the foregoing reasons, the motion to dismiss is denied.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: September 21, 2021