**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| AIMEE KRAUSE, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | Case No. 21-cv-01938 |
| v. | Hon. Lindsay C. Jenkins |
| ROCKETREACH, LLC, a Wyoming limited liability company, | |
| *Defendant*. | |

**PLAINTIFF'S MOTION FOR AND MEMORANDUM IN SUPPORT OF
<u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## TABLE OF CONTENTS

PAGE(S)

I.        INTRODUCTION ................................................................ 1

II.      BACKGROUND ................................................................ 2

    A.    Nature of the Litigation.................................................. 3

    B.    The Claim..................................................................... 3

    C.    Procedural History ....................................................... 3

III.     TERMS OF THE SETTLEMENT AGREEMENT .................... 5

    A.    Class Definitions........................................................... 5

    B.    Monetary Relief ............................................................ 6

    C.    Prospective Relief ......................................................... 6

    D.    Payment of Settlement Administration Expenses............... 7

    E.    Attorneys' Fees and Incentive Award ............................. 7

    F.    Release: ....................................................................... 7

IV.     THE CLASS NOTICE FULLY SATISFIED DUE PROCESS ............ 8

V.     THE SETTLEMENT WARRANTS FINAL APPROVAL.................... 10

    A.    Plaintiff and Class Counsel Adequately Represented the Class. ....................... 11

    B.  The Settlement Is the Product of Arm's-Length, Non-Collusive Negotiations. ......... 13

    C. The Settlement Treats Class Members Equally. ........................................ 14

    D. The Relief Secured for the Settlement Class Is Adequate and Warrants Final Approval. .................................................................... 15

    1.    The Settlement Provides Exceptional Relief. ........................................ 15

    2.    The Cost, Risk, and Delay of Further Litigation Compared to the Settlement's Benefits Favors Final Approval. ................................................ 18

    3.    The Method of Distributing Relief to the Settlement Class Is Effective and Supports Final Approval. .......................................................... 21

    4.    The Terms of the Requested Attorneys' Fees are Reasonable. ........................ 22

    E. The Remaining Considerations Set Forth by the Seventh Circuit Support Approval of the Settlement................................................................. 23

    1.    The Reaction of the Settlement Class Favors Approval. ...................... 23

    2.    Experienced Counsel's Belief that the Settlement is Beneficial to the Class Weighs in Favor of Final Approval. ..................................... 24

    3.    The Settlement Raises No Red Flags. .................................................. 25

VI.     CONCLUSION.................................................................. 26

i

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
  2011 WL 3290302 (N.D. Ill. July 26, 2011) ........................................................... 12

*Am. Int'l Grp., Inc., v. ACE INA Holdings, Inc.*,
  2012 WL 651727 (N.D. Ill. 2012) ........................................................... 23

*Chambers v. Together Credit Union*,
  2021 WL 1948453 (S.D. Ill. May 14, 2021) ........................................................... 11

*Dancel v. Groupon, Inc.*,
  2019 WL 1013562 (N.D. Ill. Mar. 4, 2019) ........................................................... 20

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ........................................................... 8

*Eubank v. Pella Corp.*,
  753 F.3d 718 (7th Cir. 2014) ........................................................... 25, 26

*Fischer, et al. v. Instant Checkmate LLC*,
  2022 WL 971479 (N.D. Ill. Mar. 31, 2022) ........................................................... 20

*Fraley v. Facebook, Inc.*,
  966 F. Supp. 2d 939 (N.D. Cal. 2013) ........................................................... 17

*Golan v. FreeEats.com, Inc.*,
  930 F.3d 950 (8th Cir. 2019) ........................................................... 20

*Goldsmith v. Tech. Sols. Co.*, No. 92 C,
  1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ........................................................... 18

*Harman v. Lyphomed, Inc.*,
  945 F.2d 969 (7th Cir. 1991) ........................................................... 23

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
  789 F. Supp. 2d 935 (N.D. Ill. 2011) ........................................................... 15, 21

*In re Cap. One Tel. Consumer Prot. Act Litig.*,
  80 F. Supp. 3d 781 (N.D. Ill. Feb. 12, 2015). ........................................................... 17, 22

*In re Google LLC St. View Elec. Commc'ns Litig.*,
  611 F. Supp. 3d 872 (N.D. Cal. 2020) ........................................................... 17

*In re NCAA Student-Athlete Concussion Injury Litig.*,
    332 F.R.D. 202 (N.D. Ill. 2019) ............................................................ 11

*Kolinek v. Walgreen Co.*,
    311 F.R.D 483 (N.D. Ill. 2015). ..................................................... 17, 22

*Leung v. XPO Logistics, Inc.*,
    326 F.R.D 185 (N.D. Ill. 2018). .......................................................... 17

*Lukis v. Whitepages Inc.*,
    454 F. Supp. 3d 746 (N.D. Ill. 2020) ................................................... 19

*McDaniel v. Qwest Commc'ns Corp.*,
    2011 WL 13257336 (N.D. Ill. Aug. 29, 2011) ...................................... 24

*Patel v. Facebook, Inc.*,
    932 F.3d 1264 (9th Cir. 2019) ............................................................. 20

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) .............................................................. 10

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) .............................................................. 10

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
    No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ........... 24, 25

*Schulte v. Fifth Third Bank*,
    2010 WL 8816289 (N.D. Ill. Sept. 10, 2010) ........................................ 14

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ........................................ 8, 19, 25

*Sessa v. Ancestry.com Operations Inc.*,
    2021 WL 4245359 (D. Nev. Sept. 16, 2021) .......................................... 19

*Snyder v. Ocwen Loan Servicing, LLC*,
    2018 WL 4659274 (N.D. Ill. Sept. 28, 2018) ........................................ 11

*Snyder v. Ocwen Loan Servicing, LLC*,
    2019 WL 2103379 (N.D. Ill. May 14, 2019) .............................. 10, 12, 13

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) .............................................................. 11

*T.K Through Leshore v. Bytedance Technolgy Co., Ltd.*,
    2022 WL 888943 (N.D. Ill. March 25, 2022) .................................. 12, 14

*Uhl v. Thoroughbred Tech. & Telecommunications, Inc.*,
    309 F.3d 978 (7th Cir. 2002) ................................................... 10

*United States v. Dish Network L.L.C.*,
    954 F.3d 970 (7th Cir. 2020) ................................................... 20

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) ............................................. passim

*ZoomInfo Techs., LLC*,
    2021 WL 4306148 (N.D. Ill. Sept. 22, 2021) ........................... 19

## STATUTES

765 ILCS 1075/1 ........................................................................ 7

765 ILCS 1075/10 ...................................................................... 3

765 ILCS 1075/30(a) ............................................................. 1, 3

765 ILCS 1075/40 ...................................................................... 3

## RULES

Fed. R. Civ. P. 23 .......................................................... 8, 10, 15

Fed. R. Civ. P. 23(c)(2)(B) ........................................................ 8

Fed. R. Civ. P. 23(e) ........................................................ passim

Fed. R. Civ. P (e)(2) ......................................................... passim

Fed. R. Civ. P (e)(2)(C) ..................................................... 13, 15

Fed. R. Civ. P (e)(2)(C)(ii) ................................................ 21, 22

Fed. R. Civ. P. 23(e)(2)(C)(iii) ................................................ 22

Fed. R. Civ. P. 23(e)(2)(D) ................................................ 14, 15

## OTHER AUTHORITIES

4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.) .................... 21

## I.     INTRODUCTION

Plaintiff Aimee Krause ("Plaintiff") filed this class action against Defendant RocketReach, LLC ("Defendant" or "RocketReach"), the operator of a "people search" website that provides biographic information about individuals, such as where they work and their contact information. Plaintiff alleged that RocketReach used her and thousands of other Illinois residents' identities to solicit subscription purchases on its website in violation of the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/30(a). After over two years of contentious litigation that required extensive motion practice, significant formal and informal discovery, and a settlement conference with the Honorable Jeffrey T. Gilbert, the Parties reached the second-ever class action settlement of IRPA claims. As explained below, the Settlement provides class members substantial monetary relief, distributed equitably through a simple claims process, and achieved an excellent participation rate after comprehensive direct notice and reminder notices. Now that notice is complete and not a single objection or opt out was received, Plaintiff respectfully requests that the Court grant final approval to this exceptional Settlement.[1]

The Settlement creates a Settlement Class of 26,490 Illinois residents (the "Settlement Class"). (Agreement § 1.25.) Under the agreement, Defendant has created a non-reversionary settlement fund amounting to $1,596,300 (the "Settlement Fund"). (Agreement § 1.27.) Unsurprisingly, given the comprehensive notice and outstanding relief available, the Settlement has seen an excellent participation rate: there have been 3,207 Approved Claims submitted, for a claims rate of 12.11%. This far exceeds standard claims rates in consumer class actions which rarely see rates in the double digits. Based on this claims rate, Settlement Class Members that

---

[1]     The capitalized terms used in this motion are those used in the Class Action Settlement Agreement (the "Settlement" or "Agreement"), attached hereto as Exhibit 1.

submitted valid claims can expect to receive approximately $300 each. The Settlement further provides non-monetary benefits: RocketReach has agreed not to display the name of any Settlement Class Member whose location, according to RocketReach's database, remains in Illinois, on any page on its website that includes a subscription offer to Defendant's products or services—rounding out exactly what this lawsuit aimed to accomplish. (Agreement § 2.2(a).)

In accordance with the Court's Preliminary Approval Order, (dkt. 87), and order modifying the notice date, (dkt. 89), on May 16, 2023 and June 9, 2023, the Settlement Administrator disseminated direct notice to the Settlement Class via email and U.S. Mail, which successfully reached an address for 87% of the Settlement Class. (*See* Declaration of Meagan Brunner ("Brunner Decl."), attached hereto as Exhibit 2, ¶ 14.) The Settlement Administrator then sent reminder notices on June 16, 2023, July 5, 2023, July 10, 2023, and July 14, 2023 to members of the Settlement Class who, at those points, had not yet filed a claim. (*See id.* ¶ 13.) By the Objection/Exclusion Deadline of July 17, 2023, not a single member of the Settlement Class objected to the Settlement or asked to be excluded. (*Id.* ¶ 15.) This lack of opposition is unsurprising, considering the excellent monetary relief provided under this second-of-its-kind Settlement and how favorably it compares against other class action settlements under similar privacy statutes.

For these reasons, and as detailed below, this Settlement is exceptional. The factors to be considered under Rule 23 when determining whether to grant final approval to a class settlement weigh in favor of approving this one. Thus, the Court may appropriately grant final approval.

## II.     BACKGROUND

Though Plaintiff has detailed the case background in her preliminary approval motion and motion for attorneys' fees, (dkts. 77, 91), it is set forth in brief below for ease of reference.

### A. Nature of the Litigation

Right of publicity statutes are state laws that codify the common law tort of "appropriation of likeness." These statutes—like the Illinois Right of Publicity Act—enable individuals to control the commercial use of their identity and persona, and to recover damages from any uncompensated commercial use. *See* 765 ILCS 1075/10 (defining "right of publicity" under the IRPA). Under the IRPA, individuals can obtain actual damages, profits flowing from the defendant's use of their identity, or $1,000. 765 ILCS 1075/40.

### B. The Claim

Plaintiff brought this suit against RocketReach, a company that operates a "people search" website that displays identifying information about a person. (Dkt. 1 ¶ 1.) Anyone can access RocketReach's website to search for a person by simply typing their first and last name in the website's search bar. RocketReach then displays a preview page featuring the searched individual's full name alongside certain uniquely identifying information, including, location, work history, and education. (*Id.* ¶ 2, 36.) RocketReach then informs the user that they can access the individual's full profile, as well as any other profile in the RocketReach database, by purchasing one of RocketReach's monthly subscriptions. (*Id.*) Plaintiff alleges that RocketReach's use of her identity as a "free preview" advertisement for its monthly subscription service constitutes an impermissible commercial use of her identity without her consent, in violation of the IRPA, 765 ILCS 1075/30(a). (*Id.* ¶¶ 3–4, 33–40.)

### C. Procedural History

This Action commenced on April 12, 2021, when Plaintiff Aimee Krause filed her putative class action complaint against RocketReach in this Court (then Judge Bucklo) alleging that RocketReach violated her and thousands of other Illinois residents' rights under the IRPA.

(Dkt. 1.) RocketReach then moved to dismiss the complaint, contending, *inter alia*, that (1) Plaintiff failed to state a claim, (2) the IRPA did not apply to its conduct, (3) its free preview ads were protected by the First Amendment, (4) the claim was barred under Section 230 of the Communications Decency Act, and (5) Plaintiff's claim violated the dormant Commerce Clause. (*See* dkts. 17, 22.) After full briefing, (*see* dkts. 25, 27), the Court denied the motion in full and permitted the case to go forward. (Dkt. 30.) Shortly thereafter, RocketReach answered the Complaint, denying Plaintiff's material allegations and asserting various affirmative defenses. (Dkt. 32.)

The Parties subsequently began exploring the possibility of settlement. To facilitate their discussions, the Parties requested referral to a Magistrate Judge for a settlement conference and a stay of all deadlines in the litigation. (Dkt. 35.) The Court granted this request and referred the case to the Honorable Jeffrey T. Gilbert. (Dkt. 37.)

In order to allow the Parties to meaningfully engage at the settlement conference, they engaged in informal discovery in advance. (Declaration of Michael Ovca ("Ovca Decl."), attached as Exhibit 3, ¶ 5.) Specifically, Plaintiff sought data reflecting the potential class size and information about the metrics Defendant maintained regarding visits to and interactions with its website, which Defendant provided. (*Id.*) With this data in hand, the Parties exchanged an initial round of settlement conference letters setting forth their respective positions. (*Id.* ¶ 6.) After these first submissions, the Parties provided supplemental settlement conference letters addressing recent developments in the IRPA settlement landscape, notably the settlement in *Butler v. Whitepages, Inc.*, No. 19-cv-04871 (N.D. Ill. Sept. 29, 2022). (*Id.*) The Parties, including Ms. Krause and a party-representative from RocketReach, then virtually attended a settlement conference session with Judge Gilbert on July 18, 2022. (*Id.* ¶ 7.) Despite multiple

rounds of back-and-forth negotiations facilitated by Judge Gilbert, the Parties were unable to reach an agreed resolution during the settlement conference. (*Id.*)

Following the failed settlement conference, the Parties then returned to litigation, where they proposed a new case schedule, requested that the stay be lifted, exchanged initial disclosures, and negotiated the entry of a protective order. (*Id.* ¶ 8.) Each Party issued and responded to formal written discovery, including interrogatories, requests for production, and requests for admission. (*Id.*) In tandem with these litigation efforts, the Parties renewed their settlement discussions, picking up where they left off following the settlement conference with Judge Gilbert. (*Id.* ¶ 9.) After several weeks of additional arm's-length negotiations, the Parties were ultimately able to reach a settlement-in-principle to resolve the Settlement Class's claims. (*Id.*) The Parties spent the next several months negotiating the final details of the Settlement Agreement. (*Id.*) Plaintiff then promptly moved for preliminary approval of the settlement (dkt. 77), which the Court granted on April 11, 2023. (Dkt. 87.) Most recently, Plaintiff and Class Counsel moved for an award of attorneys' fees, expenses, and Plaintiff's incentive awards on July 3, 2023. (Dkt. 91; Ovca Decl. ¶ 10.)

## III.    TERMS OF THE SETTLEMENT AGREEMENT

The terms of the Settlement are set forth in the Class Action Settlement Agreement, (Ex. 1), and are briefly summarized here:

### A.  Class Definitions:

In the Preliminary Approval Order, the Court certified the Settlement Class as defined in the Settlement Agreement:

> All individuals with an Illinois residential address whose named was displayed on RocketReach's website in connection with a "+Phone Plan" hyperlink from April 12, 2020 to the date of Preliminary Approval.

There are 26,490 Settlement Class Members.[2] (Brunner Decl. ¶ 4.) For the reasons the Court certified the class at preliminary approval, it should confirm certification of the Settlement Class for purposes of entering the Final Judgment. *See* Fed. R. Civ. P. 23(e).

### A.   Monetary Relief:

RocketReach has established a non-reversionary settlement fund of $1,596,300 for the Settlement Class. Each Settlement Class Member who submitted a valid claim before the July 3, 2023 Claims Deadline will receive a *pro rata* portion of the Settlement Fund after first deducting payment of notice costs, administrative expenses, and any attorneys' fees and incentive award approved by the Court. (Agreement §§ 1.12, 1.27, 2.1(a).) Should the Court approve Plaintiff's requested attorneys' fees and incentive awards—and given the claims rates of 12.11% the Settlement Class—each Settlement Class Member who submitted an Approved Claim can expect to receive a Settlement Payment for approximately $300. Any uncashed checks or electronic payments unable to be processed within 180 days of issuance will be returned to the Settlement Fund. (*Id.* § 2.1(e).) Those funds will then be redistributed *pro rata* to Settlement Class Members who submitted valid claims, if practicable, or in a manner otherwise directed by the Court upon application made by any Party (*Id.* § 2.1(e).)

### B.  Prospective Relief:

For a period of three years after approval of the Settlement becomes final and non-appealable, RocketReach will not display on any page of its website that includes a subscription

---

[2]     The class list Defendant originally provided the Settlement Administrator included the names of 26,605 individuals. (Brunner Decl. ¶ 4.) Accordingly, that is the class size Plaintiff reported in their motion for preliminary approval (dkt. 77) and motion for attorneys' fees (dkt. 91). After scrubbing and deduplicating the class list, the Settlement Administrator reported that there are 26,490 unique Settlement Class members. (Brunner Decl. ¶ 4.)

offer for Defendant's products or services the name of any Settlement Class Member whose location, according to Defendant's records, is in Illinois. (*Id.* § 2.2.)

### C. Payment of Settlement Administration Expenses:

Defendant has agreed to pay and has paid from the Settlement Fund all expenses incurred by the Settlement Administrator in providing notice, administering the Settlement, creating and maintaining the Settlement Website, receiving and processing Claim Forms, dispersing Settlement Payments, and any other related expenses. (*Id.* §§ 1.11, 1.23.)

### D. Attorneys' Fees and Incentive Award:

 Defendant has agreed to pay reasonable attorneys' fees in an amount determined by the Court, to be paid from the Settlement Fund. (*Id.* § 8.1.) Plaintiff's counsel voluntarily agreed to limit their request to 35% of the Settlement Fund, (*id.*), which they made by a separate motion on July 3, 2023. (Dkt. 91.) Defendant has also agreed to pay Plaintiff an incentive award in the amount of $1,000, subject to Court approval, in recognition of her efforts in serving as Class Representative. (Agreement § 8.3; *see* dkt. 91, at 20–21.)

### E. Release:

In exchange for the relief described above, the Settlement Class Members will release RocketReach, and its related entities, from all claims relating to RocketReach's alleged use of any aspect of a person's identity including their name, location, phone number, email address, job title, signature, photograph, image, or other identifying information to advertise, promote, or in connection with an offer for sale any products or services, including any violation of the Illinois Right of Publicity Act , 765 ILCS 1075/1, *et seq*., or any other applicable law. (Agreement §§ 1.20, 1.21, 1.22.)

IV.     THE CLASS NOTICE FULLY SATISFIED DUE PROCESS

Prior to granting final approval to this Settlement, the Court must consider whether the Settlement Class Members received "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 595 (N.D. Ill. 2011) ("*Schulte I*"). The "best notice practicable" does not necessarily require receipt of actual notice by all Settlement Class Members in order to comport with both Rule 23 and the requirements of due process. In general, a notice plan that reaches at least 70% of class members is considered reasonable. *See* Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* at 3 (2010), available at www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

Here, RocketReach provided Simpluris, Inc.—the professional Settlement Administrator appointed by the Court—a class list for purposes of providing direct notice. This list contained the names and addresses (to the extent in Defendant's possession) for 26,490 Settlement Class members. (*See* Brunner Decl., ¶ 4.) After performing skip tracing to identify contact information for Settlement Class Members that Defendant did not have, the Class List ultimately contained the names and valid email addresses for 23,940 unique Settlement Class Members, names and addresses for 1,320 unique Settlement Class Members, and only names for 1,230 unique Settlement Class Members. (*Id.*) On May 16, 2023, the Settlement Administrator sent the Court-approved notice via email to 23,940 Settlement Class Members for whom at least one valid email address was available. (*Id.* ¶ 10.) On June 9, 2023, Simpluris caused the mailing of the postcard Notice with a detachable, postage prepaid Claim Form to 2,043 Settlement Class Members for whom the email notice "bounced-back". (*Id.* ¶ 11.) The notice via email was ultimately

successfully delivered to 21,210 email addresses, and the notice via U.S. Mail was successfully delivered to 1,917 addresses. (*Id.* ¶¶ 10–12.) The Settlement Administrator also sent four rounds of reminder notices to Settlement Class Members who, at each point, had not yet submitted a claim. (*Id.* ¶ 13.) The first reminder notices were sent via email on June 16, 2023 (i.e., 30 days prior to the Claims Deadline), and were successfully delivered to 23,440 Settlement Class Members. (*Id.*) The second reminder notices were sent via email on July 5, 2023 (12 days prior to the Claims Deadline), and were successfully delivered via email to 22,612 Settlement Class Members. (*Id.*) The third reminder notices were sent via email on July 10, 2023, and were successfully delivered to 12,343 Settlement Class Members. (*Id.*) The final reminder notices were sent via email on July 14, 2023, and were successfully delivered to 12,097 Settlement Class Members. (*Id.*) Simpluris was able to send direct notice to 23,127 Settlement Class Members which is a notice reach of 92% for the Settlement Class Members for whom contact information was available and a notice reach of 87% for the full Settlement Class. (*Id.* ¶ 14.)

These summary notices directed class members to the Settlement Website, www.RocketReachIRPASettlement.com, which has been and continues to be available 24/7 and features the "long form" notice and important court filings (including Plaintiff's Motion and Memorandum of Law for Attorneys' Fees, Expenses, and Incentive Awards), important deadlines, and answers to frequently asked questions. (*Id.* ¶ 7; Agreement § 4.2(d).)

Overall, the Notice program was highly successful, as direct Notice reached more than 87% of the Settlement Class, those notices were supplemented with four rounds of reminder notices, and the Parties ultimately achieved exceptional participation rates. This greatly exceeds what is required for due process.

## V.      THE SETTLEMENT WARRANTS FINAL APPROVAL

When analyzing class action settlements, "the law quite rightly requires more than a judicial rubber stamp[.]" *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014). To that end, the Seventh Circuit has established "the district judge as a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 780 (7th Cir. 2014) (internal quotations omitted).

Federal Rule of Civil Procedure 23(e) governs court approval of class action settlements and mandates that "claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval . . . after a hearing and only on finding that it is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e); *Uhl v. Thoroughbred Tech. & Telecommunications, Inc.*, 309 F.3d 978, 986 (7th Cir. 2002). Rule 23(e)(2) sets out that a court must consider whether (1) the class representative and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's length; (3) the settlement treats class members equitably relative to each other; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2) (eff. Dec. 1, 2018); *see, e.g.*, *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019).

The Advisory Committee for the 2018 amendments to Rule 23 recognized that "each circuit has developed its own vocabulary for expressing these concerns[,]" and the Court should therefor also take into account the factors set out by the Seventh Circuit. Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. These factors are: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6)

10

stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (internal quotations omitted); *accord Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). District courts in this Circuit continue to analyze these factors in tandem with the Rule 23(e)(2) factors to ensure that a settlement is fair, reasonable, and adequate. *See, e.g.*, *In re NCAA Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 217 (N.D. Ill. 2019).

The following discussion of the factors set out in Rule 23(e)(2) and their corresponding Seventh Circuit analogues demonstrates that the Settlement is fair, reasonable, adequate, and deserving of final approval.

## A.     Plaintiff and Class Counsel Adequately Represented the Class.

The first Rule 23(e)(2) factor, whether the class representative and class counsel have adequately represented the class, focuses on class counsel's and the class representative's performance as it relates to the "conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. This factor is generally satisfied where the named plaintiff participated in the case diligently, and class counsel fought vigorously in the litigation. *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2018 WL 4659274, at *4 (N.D. Ill. Sept. 28, 2018); *see also Chambers v. Together Credit Union*, No. 19-CV-00842-SPM, 2021 WL 1948453, at *2 (S.D. Ill. May 14, 2021) (finding this factor satisfied when class counsel vigorously litigated the case "both through motion practice on the legal merits and through discovery"). In considering this factor, courts examine whether the plaintiff and class counsel had adequate information to negotiate a class-wide settlement, taking into account the nature and amount of discovery completed, whether formally or informally. *See Snyder*, 2018 WL 4659274 at *4. This inquiry is coextensive with the Seventh Circuit's direction

to consider the "stage of the proceedings and the amount of discovery completed." *Wong*, 773 F.3d at 863 (internal quotations omitted).

The knowledge and negotiating position, participation, and conduct of Ms. Krause and Class Counsel have not changed since this Court granted preliminary approval, which made an analogous finding of adequacy. (Dkt. 87.) Plaintiff's interests have remained aligned with the Settlement Class through the Notice process and preparation for final approval. Without Plaintiff shouldering the burden to represent the class and taking on these tasks as the lead Plaintiff, the relief secured for the Settlement Class would not have been possible. Given her efforts and aligned interest with the Settlement Class, there can be no doubt that Ms. Krause has only acted in the best interest of the Settlement Class and has adequately represented them.

Likewise, Class Counsel "fought hard throughout the litigation," briefing and defeating Defendant's attempt to dismiss the case, "and pursued mediation when it appeared to be an advisable and feasible alternative." *Snyder*, 2019 WL 2103379 at *4. Prior to settling, the Parties exchanged formal and informal discovery, as well as multiple settlement conference briefs, providing Class Counsel with "an adequate information base" on which to negotiate before Judge Gilbert and in subsequent discussions. *T.K.*, 2022 WL 888943 at *11; *see also Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302, at *8 (N.D. Ill. July 26, 2011) (noting standard "is not whether it is conceivable that more discovery could possibly be conducted" but whether the parties have enough information "to evaluate the merits of this case").

After years of investigation and discovery, the facts underlying Plaintiff's allegations in this case, but by no means their legal import, are now substantially undisputed: RocketReach displayed Plaintiff's and the class's names and other identifying information in free preview ads

12

for its monthly subscription service, without asking for their consent to do so. Therefore, the Settlement unequivocally meets the Rule 23(e)(2)(C) requirement.

### B. The Settlement Is the Product of Arm's-Length, Non-Collusive Negotiations.

The second factor in Rule 23(e)(2) requires the court to consider whether the proposed settlement is the result of arm's-length negotiations. *See Wong*, 773 F.3d at 864. The record here demonstrates nothing but good-faith, non-collusive bargaining between the Parties. After over two years of active litigation, the Parties agreed in July of 2022 that it was an appropriate time to explore meaningful settlement discussions. The Parties attended a settlement conference facilitated by Judge Gilbert on July 18, 2022. (Dkt. 77.) Despite multiple rounds of back-and-forth negotiations facilitated by Judge Gilbert, the Parties were unable to reach an agreed resolution during the settlement conference. (*Id.*) The Parties returned to litigation, where they proposed a new case schedule, exchanged initial disclosures, and negotiated the entry of a protective order. (*Id.*) Each Party issued and responded to formal written discovery, including interrogatories, requests for production, and requests for admission. (*Id.*) In tandem with these litigation efforts, the Parties renewed their settlement discussions, picking up where they left off following the settlement conference with Judge Gilbert. (*Id.*) After several weeks of additional arm's-length negotiations, the Parties were ultimately able to reach a settlement-in-principle. (*Id.*) The Parties then spent the next several months negotiating the outstanding terms of the full, written agreement, eventually executing the Settlement Agreement on February 21, 2023.

The arm's-length nature of these negotiations is further confirmed by the Settlement itself: it is non-reversionary, provides significant cash payments to the Settlement Class Members who submitted a simple Claim Form, and contains no provisions that might suggest fraud or collusion, such as "clear sailing" or "kicker" clauses regarding attorneys' fees. *See Snyder*, 2019 WL 2103379, at *4 (approving settlement where "there is no provision for

13

reversion of unclaimed amounts, no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that sometimes suggest something other than an arm's-length negotiation"). For these reasons, there should be no question that the Settlement here was the result of good-faith, arm's-length negotiations and is entirely free from fraud or collusion. *See Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 WL 8816289, at *4 n.5 (N.D. Ill. Sept. 10, 2010) (noting that courts "presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered") (internal quotations omitted).

### C. The Settlement Treats Class Members Equally.

Next, Rule 23(e)(2) requires the proposed settlement to treat class members "equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). That's precisely what the Settlement Agreement provides here: each claiming Settlement Class Member will receive a *pro rata* share of the Settlement Fund. And while Plaintiff seeks a service award for herself that, if approved, would have her receive marginally more of the Settlement Fund than other Class Members, this is not problematic. "[E]quitably relative to each other" does not mean "equally to each other," and absent unusual circumstances not present here, a modest service award to a class representative does not render a proposed settlement unfair, unreasonable, or inadequate. *See T.K.*, 2022 WL 888943 at *15–16 (finding $2,500 service awards did not render treatment of class members inequitable, noting that "[b]ecause class representatives do more work and take more risks than the average class member, service awards to named class members will generally not raise a red flag") (quotations omitted).

The Settlement also provides for identical prospective relief. RocketReach is prohibited from displaying the names of any Settlement Class Member who, according to RocketReach's database, is located in Illinois on any page on its website that includes a subscription offer for

14

three years. (Agreement § 2.2.) Further, each Settlement Class Member will release the same types of claims against RocketReach. (*Id.* § 3.) The proposed Settlement Agreement treats all Class Members equitably relative to each other and thus supports final approval here.

### D. The Relief Secured for the Settlement Class Is Adequate and Warrants Final Approval.

The final and most crucial factor under Rule 23(e)(2) scrutinizes whether the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2)(C). In making this determination, Rule 23 identifies several sub-factors for the Court to consider, including (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; (iii) the terms of any proposed award of attorneys' fees, including timing of payment, and (iv) any side agreements made in connection with the settlement. *Id.* This analysis necessarily encompasses two of the Seventh Circuit's factors: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; [and] (2) the complexity, length, and expense of further litigation[.]" *Wong*, 773 F.3d at 863. Because the first Seventh Circuit factor "[is the] most important factor relevant to the fairness of a class action settlement[,]" it is critically important for a settlement to meet this standard. *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 958 (N.D. Ill. 2011) (internal quotations omitted). This Settlement does so.

#### 1. The Settlement Provides Exceptional Relief.

The Settlement provides outstanding monetary relief that sets a new high bar for IRPA settlements specifically, and that excels when compared to other privacy class action settlements. Splitting up the $1,596,300 fund across the thousands of Settlement Class Members that submitted valid Claim Forms (after deducting any notice costs, and any approved attorneys' fees

15

and costs, and incentive awards) each claiming Settlement Class Member will be paid approximately $300.

Settlements in other statutory privacy class actions frequently do not come near this amount. Indeed, the relief obtained here substantially exceeds the relief provided in the nearest comparator settlement: the first-ever IRPA class action settlement that former Judge Feinerman approved. *See Butler v. Whitepages, Inc.*, No. 19-cv-04871 (N.D. Ill., Sept. 29, 2022) dkts. 272-1, 277 (granting final approval to settlement providing $95 to each IRPA claimant). The Settlement also compares favorably against class settlements under similar privacy statutes with statutory damages provisions, like Illinois Biometric Information Privacy Act. Some have offered only credit monitoring to class members, with no monetary relief. *See Carroll v. Crème de la Crème, Inc.*, 2017-CH-01624 (Cir. Ct. Cook Cnty. June 6, 2018). Others have capped the amount class members can receive and (unlike the Settlement here) reverted the inevitable remaining funds back to the defendant, rather than distributing the fund *pro rata* to class members. *E.g.*, *Zhirovetskiy v. Zayo Grp., LLC*, 2017-CH-09323 (Cir. Ct. Cook Cnty. Apr. 8, 2019) (approving, in BIPA case, $990,000 reversionary fund for 2,200 class members, which capped payments at $400 and reverted up to $490,000 of unclaimed funds back to defendant); *Rosenbach v. Six Flags Ent. Corp.*, 2016-CH-00013 (Cir. Ct. Lake Cnty. Oct. 29, 2021) (approving, in BIPA case, $36 million reversionary fund for approximately 1,110,000 class members, which capped class member payments at $200 or $60 depending on date of finger scan and reverted unclaimed funds to defendant); *Lark, et al v. McDonald's USA, LLC, et al.*, No. 17-L-559 (Cir. Ct. St. Clair Cnty. Feb. 28, 2022) (approving, in BIPA case, $50 million reversionary fund for more than 175,000 class members, which capped class member payments at $375 or $190 and reverted tens of millions of dollars in unclaimed funds to defendants); *Marshall v.*

*Lifetime Fitness, Inc.*, 2017-CH-14262 (Cir. Ct. Cook Cnty. July 30, 2019) (paying, in BIPA

case, a cap of $270 to individuals who filed claims and reverting the remainder to defendant).

And all too often, privacy settlements secure *cy pres* relief without **any** individual payments to

class members. *See, e.g.*, *In re Google LLC St. View Elec. Commc'ns Litig.*, 611 F. Supp. 3d 872,

890–98 (N.D. Cal. 2020) *aff'd sub nom. In re Google Inc. St. View Elec. Commc'ns Litig.*, 21

F.4th 1102 (9th Cir. 2021) (approving, over objections of class members and state attorney

general, settlement providing only *cy pres* relief federal privacy statute violations where $10,000

in statutory damages were available per claim).

   This Settlement stands in stark contrast, as it creates a non-reversionary cash Settlement

Fund for the Settlement Class, with a net payment per person that greatly exceeds the few other

right of publicity settlements that have provided cash payments to class members, setting a new

standard for IRPA settlements as the second of its kind. *See, e.g.*, *Butler v. Whitepages, Inc.*, No.

19-cv-04871 (N.D. Ill., Sept. 29, 2022) dkts. 272-1, 277 (approving settlement resulting in $95 to

each IRPA claimant) *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 944 (N.D. Cal. 2013)

(approving settlement under California's right of publicity statute that resulted in $15 payments

to claimants, representing 2% of possible statutory damages); *Perkins, et al v. LinkedIn Corp.*,

No. 5:13-cv-04303, dkt. 134 (N.D. Cal. Feb. 16, 2016) (approving $13 million settlement under

California's right of publicity statute for approximately 20.8 million class members). The ratio

between the Settlement Fund amount and the number of Settlement Class Members ($1,596,300

million for 26,490 individuals) also excels compared to class settlements under another privacy

statute—the TCPA—that have been approved in this District, *see, e.g.*, *Leung*, 326 F.R.D. at 196

($7 million fund for 311,013 class members); *Kolinek*, 311 F.R.D. at 493 ($11 million fund for

9.2 million class members); *In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. at 787

17

($75.5 million fund for 17.5 million class members), as well as many consumer BIPA

settlements in Illinois, *see, e.g.*, *Miracle-Pond v. Shutterfly*, 2019-CH-07050 (Cir. Ct. Cook Cnty.

Sept. 9, 2021) ($6.75 million fund for potentially millions of class members); *Prelipceanu v.

Jumio Corp.*, 2018-CH-15883 (Cir. Ct. Cook Cnty. July 21, 2020) ($7 million fund for 169,155

class members.

      Finally, the non-monetary benefits created by the Settlement support final approval. For a

period of three years, RocketReach has agreed not to display the name of any Settlement Class

Member whose location, according to RocketReach's database, remains in Illinois on any page

on its website that includes a subscription offer to its products or services. (Agreement § 2.2.)

This prospective relief is aimed at remedying the conduct that led to the lawsuit in the first

instance.

      At bottom, both the monetary and prospective relief secured here are excellent and should

be finally approved.

### 2. The Cost, Risk, and Delay of Further Litigation Compared to the Settlement's Benefits Favors Final Approval.

      "As courts recognize, a dollar obtained in settlement today is worth more than a dollar

obtained after a trial and appeals years later." *Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995

WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995). In evaluating the adequacy of the relief provided

to the class, courts should first compare the cost, risks, and delay of pursing a litigated outcome

to the settlement's immediate benefits. Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to

2018 amendment.

      The Settlement here meets both the 23(e)(2)(C) requirements and the relevant Seventh

Circuit considerations because it provides immediate relief to the Settlement Class while

avoiding potentially years of risky litigation and appeals, with both Plaintiff and Defendant

believing that they have strong cases for their side. *See Schulte I*, 805 F. Supp. 2d at 586 ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation."). The risks here to Plaintiff and the putative class were not insignificant.

To start, the application of the IRPA to the conduct alleged here is a relatively new issue. While this Court denied Defendant's motion to dismiss, Defendant could have re-raised its arguments at summary judgment or on appeal. Additionally, the sheer number of cases pending throughout the country alleging similar right of publicity claims based on "free preview" advertising makes appellate review of this type of case almost inevitable. *See, e.g.*, *Backowski v. PeopleConnect, Inc.*, No. 21-cv-00115 (W.D. Wash.); *Lukis v. Whitepages Inc*., 454 F. Supp. 3d 746 (N.D. Ill. 2020), reconsideration denied, 2020 WL 6287369 (N.D. Ill. Oct. 27, 2020); *Ramos v. ZoomInfo Techs., LLC*, 2021 WL 4306148 (N.D. Ill. Sept. 22, 2021); *Sessa v. Ancestry.com Operations Inc.*, 2021 WL 4245359 (D. Nev. Sept. 16, 2021). A negative appellate decision on any of the potentially dispositive issues in this case or any affirmative defenses—such as statutory exceptions to liability, First Amendment protections, Section 230 of the Communications Decency Act, or application of the dormant commerce clause—could singlehandedly sink Plaintiff's entire case or ability to maintain it as a class action.

Plaintiffs would also be required to use significant resources to litigate the issue of class certification. The Advisory Committee notes to amended Rule 23(e) suggest that courts should consider the likelihood of certifying a class for litigation in evaluating this sub-factor because the issue of litigating class certification is a salient one. While Plaintiff believes that she would ultimately prevail on certification issues given Defendant's uniform conduct, class certification is still a significant hurdle and presents a risk to any class recovery. This Court's class certification

decision in *Fischer, et al. v. Instant Checkmate LLC*, No. 19-cv-04892, 2022 WL 971479 (N.D. Ill. Mar. 31, 2022) demonstrates the risk that class certification poses to class members. In *Fischer*—the first class certification decision in this space—the Court certified two classes, but declined to certify a third class of individuals appearing in search results. *Id*. at *3, *15. Though the Court's decision was based on the facts particular to that case and the specific proposed class definition, the decision demonstrates that class certification would have been by no means guaranteed. *See also Dancel v. Groupon, Inc*., 18 C 2027, 2019 WL 1013562, at *3-4 (N.D. Ill. Mar. 4, 2019), *aff'd*, 949 F.3d 999 (7th Cir. 2019) (denying motion to certify IRPA class because whether any given username was sufficient to identify an individual presented individual inquiries that defeated predominance).

Even if adversarial class certification were granted, the possibility of an interlocutory appeal would still risk causing significant delay to any recovery. *Cf. Patel v. Facebook, Inc.*, 932 F.3d 1264, 1277 (9th Cir. 2019) (affirming class certification on interlocutory appeal in BIPA case filed four years earlier). And assuming Plaintiff would have succeeded at trial, Plaintiff reasonably expects that Defendant would have argued for a reduction in damages based on due process in light of the significant potential statutory damages at issue. *See, e.g.*, *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 963 (8th Cir. 2019) (statutory award in TCPA class action of $1.6 billion reduced to $32 million), *but see United States v. Dish Network L.L.C.*, 954 F.3d 970, 980 (7th Cir. 2020), *cert. dismissed*, 141 S. Ct. 729 (2021) (statutory award of $280 million for violating various telemarketing statues over 65 million times did not violate due process).

As the forgoing makes clear, there is no guarantee that the Settlement Class Members would receive any benefit from protracted litigation. Such protracted litigation is costly and time consuming, and it is possible that it "would provide [c]lass [m]embers with either no in-court

recovery or some recovery many years from now . . ." *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. at 964. Thus, given the substantial risks, expense, and delay that would accompany further litigation, the Settlement offers substantial and immediate value relative to the strength of Plaintiff's case. This crucial factor therefore strongly supports final approval.

### 3. The Method of Distributing Relief to the Settlement Class Is Effective and Supports Final Approval.

The "effectiveness of [the]…method of distributing relief to the class" weighs strongly in favor of the adequacy of this Settlement under Rule 23(e)(2)(C)(ii). An effective distribution method "get[s] as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.). Settlement distribution here is straightforward. Settlement Class Members could submit a claim either by mail or online. Those who submitted online had the option to select to receive their Settlement Payment by Venmo, Zelle, Paypal, or check. (Agreement § 1.4.) Should the Settlement be approved, the Settlement Administrator will distribute Settlement Payments to each Settlement Class Member who submitted a valid claim for their *pro rata* portion of the Settlement Fund. *See Crumpton v. Octapharma Plasma, Inc.*, No. 19-cv-08402, dkt. 92 (N.D. Ill. Feb. 16, 2022) (approving settlement where settlement administrator processed claims under counsel's oversight and distributed *pro rata* shares to class members with valid claims). If, after 180 days of issuance, any electronic payments are unable to be processed or any checks go uncashed, those residual funds will revert to the Settlement Fund to be distributed *pro rata* to Settlement Class Members with approved claims if practicable, or in a manner as otherwise directed by the Court upon application made by any party. (Agreement § 2.1(e).) This well-

21

recognized method of distributing monetary relief fully satisfies this aspect of Rule
23(e)(2)(C)(ii).

### 4. The Terms of the Requested Attorneys' Fees are Reasonable.

The third sub-factor considers the adequacy of the relief provided to the class taking into
account "the terms of [the] proposed award of attorney's fees, including timing of payment[.]"
Fed. R. Civ. P. 23(e)(2)(C)(iii).

Class Counsel separately petitioned the Court for an award of reasonable attorneys' fees
after the Settlement Class received Notice and before the deadline to object. (Dkt. 91.) They also
ensured that request was posted on the Settlement Website so that the Settlement Class had
access to it. The Settlement's contemplated method of calculating attorneys' fees (*i.e.*, the
percentage-of-the-fund method) and Class Counsel's request for thirty-five percent (35%) of the
non-reversionary net Settlement Fund is reasonable and predicated on the outstanding relief
provided to the Settlement Class. (Agreement § 8.1.) To be sure, the percentage-of-the-fund
method has been used to determine a reasonable fee award in virtually every class action
settlement under a privacy statute in both federal and state courts in this District, and the
requested percentage fee award is well in line with common fund fee awards in statutory privacy
settlements in this District. *See*, *e.g.*, *Butler*, dkts. 266, 277 (awarding 35% of the fund in IRPA
settlement) (Feinerman, J.); *Alvarado v. Int'l Laser Prods., Inc.*, No. 18-cv-7756, dkt. 70 (N.D.
Ill. Jan. 24, 2020) (awarding 35% of the fund in BIPA case) (Pallmeyer, J.); *Lopez-McNear v.
Superior Health Linens, LLC*, No. 19-cv-2390, dkt. 69 (N.D. Ill. Apr. 27, 2021) (same)
(Pallmeyer, J.); *Cornejo v. Amcor Rigid Plastics USA, LLC*, No. 18-cv-7018, dkt. 57 (N.D. Ill
Sept. 20, 2020) (same) (Pacold, J.); *Neals v. ParTech, Inc.*, No. 19-cv-05660, dkt. 140 (N.D. Ill.
July 20, 2022) (same) (Valderrama, J.); *Kolinek*, 311 F.R.D. at 503 (awarding 36% of fund in
TCPA case); *In re Cap. One Tel. Consumer Prot. Act Litig.*,

80 F. Supp. 3d at 792 (awarding 36% of first $10 million of the fund in TCPA case). A lodestar cross-check further confirms the reasonableness of the requested fees. The 35% fee award amounts to a multiplier on the base lodestar of just 1.64, where multipliers of 2-4 are common. (Dkt. 91.) This multiplier is in line with multipliers awarded in similar cases and thus confirms the reasonableness of the 35% of each common fund requested. *See, e.g.*, *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991).

Finally, if approved, the Settlement allows certain Class Counsel to elect to be paid their portion of attorneys' fees within seven days after the Court's entry of a final approval order; otherwise, fees will be paid within five business days after final judgment, including any appeals. (Agreement §§ 1.10, 8.2, Ex. E.) These terms are reasonable and should be approved.

### E. The Remaining Considerations Set Forth by the Seventh Circuit Support Approval of the Settlement.

In addition to the requirements that overlap with those now explicitly required by Rule 23(e), the Seventh Circuit requires a few additional considerations: the class's reaction to the settlement, the opinion of competent counsel, and whether the settlement raises any red flags that courts should be wary of. *Wong*, 773 F.3d at 863. Here, the positive reaction of the Settlement Class, the support of counsel, and the lack of red flags all favor approval.

### 1. The Reaction of the Settlement Class Favors Approval.

Lack of opposition to a class action settlement "indicates that the class members consider the settlement to be in their best interest." *Am. Int'l Grp., Inc.*, *v. ACE INA Holdings, Inc.*, 2012 WL 651727, at *6 (N.D. Ill. 2012). Here, the Court-approved Settlement Administrator diligently implemented the Notice plan outlined in the Agreement, and the objection and exclusion deadlines have passed without a single person objecting to or opting out of the Settlement. That not one person has objected to the Settlement is powerful evidence of the Settlement Class's

support for the Settlement. *See McDaniel v. Qwest Commc'ns Corp.*, No. 05 C 1008, 2011 WL 13257336, at \*4 (N.D. Ill. Aug. 29, 2011) (finally approving settlement with no objections and noting that "[a]n absence of objection is a 'rare phenomenon[]' and 'indicates the appropriateness of the request[]'") (citations omitted); *see also Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at \*3 (N.D. Ill. Dec. 10, 2001) (stating that "[t]he absence of objection to a proposed class settlement is evidence that the settlement is fair, reasonable and adequate").

Similarly, the 12.11% claims rate from the Settlement Class also indicates a robust positive reaction from the Settlement Class. *See Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*, FED. TRADE COMM'N, 11 (Sept. 2019) ("Across all cases in our sample requiring a claims process, the median calculated claims rate was 9%, and the weighted mean (*i.e.,* cases weighted by the number of notice recipients) was 4%."). The rate at which the Settlement Class Members participated in this Settlement is consistent with settlements in other privacy class actions. *See Sekura v. L.A. Tan Enters., Inc.*, 2015-CH-16694 (Cir. Ct. Cook Cnty. Dec. 1, 2016) (15% claims rate); *Kusinski*, 2017-CH-12364 (12.7% claims rate); *Thome*, No. 19-cv-6256, dkt. 90 (10% claims rate); *Prelipceanu v. Jumio Corp.*, 2018-CH-15883 (Cir. Ct. Cook Cnty. July 21, 2020) (5% claims rate). The strong response rate combined with a total lack of objections and a single opt out thus strongly supports granting final approval to the Settlement.

### 2. Experienced Counsel's Belief that the Settlement is Beneficial to the Class Weighs in Favor of Final Approval.

The opinion of competent counsel also supports final approval of the Settlement. Where class counsel has "extensive experience in consumer class actions and complex litigation[,]" their "belie[f] that the [s]ettlement is beneficial to the [c]lass" supports approval of the

settlement. *Schulte I*, 805 F. Supp. 2d at 586; *see also Retsky Family Ltd. P'ship*, 2001 WL

1568856, at *3 (finding plaintiff's counsel competent, and their endorsement of a settlement thus

supporting approval, where counsel were "experienced and skilled practitioners in the [relevant]

field, and [were] responsible for significant settlements as well as legal decisions that enable

litigation such as this to be successfully prosecuted") (internal quotations omitted).

Here, as discussed at length in Plaintiff's motion for preliminary approval (dkt. 77 at 19–

20, 30), Class Counsel are competent to give their opinion on this Settlement. For the reasons

discussed above and in light of the positive response to the Notice, Class Counsel continues to

believe that the Settlement provides outstanding monetary and prospective relief to the

Settlement Class without the uncertainty and delay that years of litigation would bring. (Ovca

Decl. ¶ 11.) Thus, Class Counsel's opinion is that the Settlement is in the best interest of the

Settlement Class. (*Id.*)

For these reasons, the opinion of Class Counsel weighs in favor of final approval.

### 3. The Settlement Raises No Red Flags.

Finally, the Settlement raises none of the red flags identified by the Seventh Circuit in

analyzing class settlements. In *Eubank v. Pella Corp.*, the Seventh Circuit identified "almost

every danger sign in a class action settlement that our court and other courts have warned district

judges to be on the lookout for[.]" 753 F.3d 718, 728 (7th Cir. 2014). Those signs included (i) a

single class containing two adverse subgroups, (ii) a familial relationship between class counsel

and the class representative, (iii) failure to establish the amount of class member recovery, (iv)

the reversion of any unawarded attorneys' fees to defendant, (v) an advance of attorneys' fees

before notice of the settlement was provided to class members, (vi) a provision in the settlement

agreement denying incentive awards to class representatives who objected to the settlement, (vii)

25

providing some class members only coupons, and (viii) a complicated claims procedure creating substantial obstacles to recovery. *Id.* at 721-28.

Here, none of those red flags are present. There are no adverse subgroups in the class. Further, the Class Representative, Plaintiff Krause, has no familial relationship with Class Counsel or any member of their respective law firms. The claims process here was simple and straightforward: Class Members were able to submit the short, one-page Claim Form either online through the Settlement Website, or by mail by submitting the postage-prepaid Claim Form. Any unawarded attorneys' fees will be distributed to the claiming Settlement Class Members, not revert to RocketReach (Agreement § 8.1); no attorneys' fees will be paid to Class Counsel until after final approval of the Settlement; and there is no provision in the Settlement Agreement denying an incentive award to a named plaintiff who does not support the Settlement.

In short, the Settlement displays no warning signs that should give this Court pause. The Settlement should therefore be finally approved.

## VI.      CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order finally approving the Parties' Settlement and ordering such other relief as this Court deems reasonable and just.[3]

<table>
<tr><td></td><td><b>AIMEE KRAUSE</b>, individually and on behalf of all others similarly situated,</td></tr>
<tr><td>Dated: August 21, 2023</td><td>By: /s/ Michael W. Ovca<br>      One of Plaintiff's Attorneys</td></tr>
<tr><td></td><td>Benjamin H. Richman<br>brichman@edelson.com<br>Ari J. Scharg<br>ascharg@edelson.com</td></tr>
</table>

---

[3]      For the Court's convenience, Plaintiff will submit a proposed final approval order to the Court's designated email address prior to the September 12, 2023 final approval hearing.

J. Eli Wade-Scott
ewadescott@edelson.com
Michael W. Ovca
movca@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Philip L. Fraietta
pfraietta@bursor.com
BURSOR & FISHER, P.A.
1330 Avenue of the Americas
32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163

*Class Counsel*

27